**UNITED STATES of America**

v.

**Abdigani HUSSEIN, Defendant**

**No. CR. 02–25–P–H.**

United States District Court,
D. Maine.

Oct. 31, 2002.

Jonathan R. Chapman, Assistant United States Attorney, Office of the United States Attorney, Portland, ME, for Plaintiff.

Joseph H. Groff, III, Jensen, Baird, Gardner & Henry, Portland, ME, Sidney L. Moore, Atlanta, GA, for Defendant.

## DECISION AND ORDER ON MOTION FOR ACQUITTAL

HORNBY, Chief Judge.

The Indictment charged that Abdigani Hussein "unlawfully, knowingly and intentionally possessed with intent to distribute a substance containing Cathinone, a Schedule I controlled substance .... " Before the case went to the jury, I reserved judgment on Hussein's Rule 29 motion for ac-

quittal. The jury found him guilty. I now DENY the motion.[1]

The government concedes that there was no evidence that Hussein knew that he had cathinone or that he knew what cathinone was. Even the Drug Enforcement Administration ("DEA") agents and chemist who testified were previously unfamiliar with cathinone. What the evidence showed was that Hussein picked up a parcel at the Portland, Maine, FedEx office. The parcel contained what Hussein knew was khat, a plant material that grows in East Africa and the Arabian peninsula. Khat is imported by certain ethnic groups to chew or brew into tea. Hussein intended to deliver it to his friend Gani Mohamed. Hussein also had some khat in his car and had been chewing it the morning of his arrest. A DEA chemist testified that, upon chemical testing,[2] a sample of the khat in the FedEx package contained a detectable amount of cathinone. Without objection, I instructed the jury that, in order for them to find that Hussein knowingly and intentionally possessed a substance containing cathinone, the government must prove that either: (1) Hussein knew that his khat contained cathinone (which the government admittedly could not prove); or (2) Hussein knew that the substance he possessed contained a controlled substance. I then defined controlled substance as "a drug or other substance regulated under federal drug abuse law."

There are two issues on the motion for acquittal: (1) was there sufficient evidence for the jury to find beyond a reasonable doubt that Hussein knew that he possessed a controlled substance; and (2) has

---

1. The government's trial brief did not address the issues on this motion; the defendant filed a trial brief apparently from a different trial. I invited post-trial briefing, but neither side provided any.

2. The DEA agent had frozen the khat immediately upon seizure to avoid any degradation.

the government made it sufficiently clear that possession of khat is criminal, to satisfy constitutional due process standards? I conclude that the answer to both questions is yes.

## SUFFICIENCY OF THE EVIDENCE

The drug laws contain what lawyers and judges call a "scienter" requirement. The statute specifically requires that the government prove that a defendant "knowingly or intentionally" possessed a controlled substance with intent to distribute.[3]

■ Courts have interpreted this statutory language to mean that the government must prove a defendant's "awareness that he is in possession of a controlled substance."[4] But it is also clear that ordinarily a defendant does not have to know that what he is doing is criminal; it is sufficient that he knows what he is doing. Sometimes we capture this concept in the phrase "ignorance of the law is no defense." For example, a felon who possesses a firearm has to know that he has a firearm, but he does not have to know that possessing the firearm is illegal in order to be convicted of the possession offense.[5]

That formulation works fine for most drug cases. The statute makes marijuana, for example, a controlled substance. Therefore, a defendant cannot successfully argue that he should be acquitted because he did not know that possessing marijuana was illegal. But ordinarily the government must prove that a defendant knew that what he possessed was marijuana.[6]

There are cases, however, where the government has not been able to prove that a defendant knew the identity of the illicit substance that he possessed. For example, he may have thought that he bought one controlled substance (perhaps heroin), but it turns out to have been a different controlled substance (perhaps cocaine). The First Circuit has stated that in such circumstances the government has to prove that the defendant knew that he possessed a controlled substance, but not the particular substance it turned out to be.[7] It is from those cases that I drew the alternative formulation of the jury instruction here. I instructed the jury that in order for them to find that Hussein knowingly and intentionally possessed a substance containing a detectable quantity of

3. 21 U.S.C. § 841(a) (2000).

4. *United States v. Pope*, 561 F.2d 663, 670 (6th Cir.1977).

5. *United States v. Ramos*, 961 F.2d 1003, 1005 (1st Cir.1992); *United States v. Smith*, 940 F.2d 710, 713 (1st Cir.1991).

6. *See, e.g., United States v. Cain*, 130 F.3d 381, 384 (9th Cir.1997) ("Cain did not have to know that possession of a controlled substance was illegal. He only had to know that the substances he possessed were controlled substances."); *cf. Staples v. United States*, 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (government must prove that defendant knew that his firearm had the physical characteristics that brought it within the scope of the statutory prohibition).

7. *United States v. Woods*, 210 F.3d 70, 77 (1st Cir.2000) ("[T]he government need only prove that the defendant had knowledge that he was dealing with a controlled substance, not that he had knowledge of the specific controlled substance."); *United States v. Cheung*, 836 F.2d 729, 731 (1st Cir.1988) (evidence need not establish defendant knew specific identity of the controlled substance); *United States v. Kairouz*, 751 F.2d 467, 469 (1st Cir.1985) ("What is of essence to establish ... is that the substance be controlled ... *not which* one of the proscribed substances it happens to be."); *see also United States v. Barbosa*, 271 F.3d 438, 458 (3d Cir.2001); *United States v. Sheppard*, 219 F.3d 766, 769 (8th Cir.2000); *United States v. Leavitt*, 878 F.2d 1329, 1337 (11th Cir.1989); *United States v. Lopez–Martinez*, 725 F.2d 471, 474 (9th Cir.1984); *United States v. Gonzalez*, 700 F.2d 196, 200 (5th Cir.1983); *United States v. Morales*, 577 F.2d 769, 776 (2d Cir.1978).

cathinone, "the government must prove beyond a reasonable doubt that Abdigani Hussein knew ... that the substance he possessed contained a controlled substance." Neither the government nor the defendant objected to the instruction.

So did the evidence permit the jury to find beyond a reasonable doubt that Hussein knew that his package of khat contained a controlled substance? What the jury had was abundant evidence to support a finding that Hussein knew that something illegal was going on. Hussein knew that he and many others were picking up packages of khat at the FedEx office for Gani Mohamed. (This was Hussein's second trip for Gani Mohamed.) He knew that Gani Mohamed used the names and addresses of individuals all over Lewiston and Portland for shipments. He knew that Gani Mohamed had given him only a tracking number for the package he was to pick up. Hussein knew that Gani Mohamed asked him to pick up the parcel even though Gani Mohamed was going to be in Portland himself, and indeed had arranged for Hussein to bring it to him at a restaurant in the Portland vicinity about an hour after the pickup. He knew that Gani Mohamed paid him not in money but in khat. Hussein knew that Gani Mohamed sold the khat for $6–8 a bundle to Somalis in Lewiston. When Hussein picked up the parcel, neither Gani Mo-

hamed's name nor Hussein's name was listed as addressee on it, and the label falsely listed the contents as documents. At the very least, therefore, the jury could find by circumstantial evidence but beyond a reasonable doubt that Hussein knew that he was doing something to avoid detection by law enforcement authorities.

■ One of the defense theories, however, was that any concern about law enforcement authorities could just as easily have been about Department of Agriculture authorities [8] as drug authorities. In other words, because vegetation generally cannot be brought into the country without inspection and permits (to restrict pests, invasive plants, etc.), the jury could find that Hussein knew that something illegal was going on, but could not find beyond a reasonable doubt that Hussein knew that it involved controlled substances.[9] Although this issue is close, I conclude that there was sufficient evidence for the jury to find that Hussein knew that he was trafficking in a controlled substance.[10] All this clandestine activity involved khat, something that the evidence showed Hussein knew that he and other Somalis used for a stimulant effect.[11] There was no record evidence of concern by agricultural authorities, or evidence that Hussein knew of any such concern. All that the evidence showed on this subject was the cross-examination of the FedEx manager from

---

8. Or, alternatively, customs authorities concerned with collecting duties. The analysis is the same in either event.

9. As a result of this theory, I rejected a proposal from the government to instruct the jury that it was sufficient to prove that Hussein simply knew that his package was "contraband."

10. "The evidence may be entirely circumstantial, and need not exclude every reasonable hypothesis of innocence ...." *United States v. Batista–Polanco*, 927 F.2d 14, 17 (1st Cir. 1991) (citations omitted); *see also United*

*States v. Palmer*, 203 F.3d 55, 63 (1st Cir.), cert. denied, 530 U.S. 1281, 120 S.Ct. 2756, 147 L.Ed.2d 1018 (2000); *United States v. Morillo*, 158 F.3d 18, 22 (1st Cir.1998); *United States v. Guerrero*, 114 F.3d 332, 343–44 (1st Cir.1997).

11. The DEA agent testified that after he had identified himself as a DEA agent to Hussein, arrested him and taken him to the DEA office, he asked Hussein if he knew that what he was doing was illegal and Hussein replied "not really, no." The jury could also draw a negative inference from this qualified answer.

Portland who agreed that imported vegetation in the FedEx system was subject to special rules and regulations and generally went to Memphis for processing. Although the jury could have chosen to acquit Hussein on the defense theory, they were also entitled to find beyond a reasonable doubt that Hussein knew that he had a controlled substance and was evading drug-regulating authorities, not agricultural authorities.[12]

## CONSTITUTIONAL ADEQUACY OF NOTICE

██ As I have said, ignorance of the law generally is no defense.[13] But there is a competing statement of principle. When governmental authorities decide to make particular conduct criminal they must, in order to avoid constitutional vagueness concerns, "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[14] Ambiguous criminal statutes create two concerns: (1) adequacy of "actual notice" to people and (2) "arbitrary enforcement."[15] For reasons that are unexplained, this country's duly promulgated laws and regulations nowhere list khat as a controlled substance. Instead, the regulations list cathinone in Schedule I and cathine in Schedule IV. Cathinone and cathine are chemical components of khat. Does the failure to list khat itself as a controlled substance, while listing cathinone and cathine, satisfy constitutional vagueness concerns?

On the subject of whether a law provides adequate notice that certain behavior is criminal, the Supreme Court has said that the question is whether "reasonable persons would know that their conduct is at risk."[16] A "scienter" requirement in

---

**12.** There are cases where courts have found that knowledge of suspicious or illegal activity was not enough. *See, e.g., United States v. Reveles,* 190 F.3d 678, 688 n. 16 (5th Cir. 1999) (jury could not find beyond a reasonable doubt that the defendant knew the scheme involved drugs as opposed to other contraband "such as illegally-imported ceramics"); *United States v. Salmon,* 944 F.2d 1106, 1114–15 (3d Cir.1991) (same); *United States v. Wexler,* 838 F.2d 88, 90–92 (3d Cir. 1988) (same). But unlike each of these cases, Hussein knew that he had khat. In those cases there was no proof that the defendant knew what the "product" was, only that it was somehow illegal.

**13.** *Shevlin–Carpenter Co. v. Minnesota,* 218 U.S. 57, 68, 30 S.Ct. 663, 54 L.Ed. 930 (1910) ("ignorance of the law will not excuse"). The principle is the same "whether the law be a statute or a duly promulgated and published regulation." *United States v. Int'l Minerals & Chem. Corp.,* 402 U.S. 558, 563, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). Here, the prohibition of cathinone results from the Administrator of the Drug Enforcement Administration, by authority delegated to it by regulation of the Department of Justice, having listed the chemical in the Federal Register. 21 C.F.R.

§ 1308.11(f)(2), as authorized by 21 U.S.C. § 811(a) and 28 C.F.R. § 0.100. That in turn provides the same legal notice as inclusion in a statute. *Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *see also* 44 U.S.C. § 1507.

**14.** *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

**15.** *Id.* The rule of lenity serves similar purposes:

[T]he rule of lenity commands that genuine ambiguities affecting a criminal statute's scope be resolved in the defendant's favor. The important purposes served by the rule of lenity include the following: "to promote fair notice to those subject to the criminal laws, to minimize the risk of selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts."

*United States v. Bowen,* 127 F.3d 9, 13 (1st Cir.1997) (quoting *United States v. Kozminski,* 487 U.S. 931, 952, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988)) (citations omitted).

**16.** *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

the statute, like the requirement in this statute that a defendant knows that he has a controlled substance, reduces notice concerns.[17] Moreover, in this Circuit a defense of ignorance of the law, the notice argument, is limited to "wholly passive" conduct, and the First Circuit has ruled that possession of a firearm is not "passive."[18] If possession of a firearm is not "passive," then neither is possession of khat. That ends the adequacy of notice argument under existing precedent.[19]

■ The Supreme Court, however, has said that "the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legisla-

ture establish minimal guidelines to govern law enforcement.'"[20] Otherwise, "a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'"[21] In this case, the record provides just enough to cause concern, but not enough to rule in the defendant's favor.

The evidence presented at trial indicates that cathinone is present in fresh khat, but is highly unstable and degrades rapidly into the less potent cathine within 72 hours after the khat leaf is picked. Khat is grown and harvested in East Africa and the Arabian peninsula. Hussein's khat, therefore, was first harvested and then transported from that location to England. Then it was repackaged and on March 21,

---

17. *Vill. of Hoffman Estates v. Flipside,* 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 342, 72 S.Ct. 329, 96 L.Ed. 367 (1952); *United States v. Collins,* 272 F.3d 984, 988–89 (7th Cir.2001) (a case involving 21 U.S.C. § 841(a)).

18. *United States v. Denis,* 297 F.3d 25, 29 (1st Cir.2002). The requirement of "passivity" comes from *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). *Lambert* held that someone charged with being present in Los Angeles without having registered as a convicted felon as required by local ordinance could not be held to notice that her conduct (presence in Los Angeles) might be criminal. The Supreme Court described her as "wholly passive and unaware of any wrongdoing," and found the law unconstitutional. *Id.* at 228, 78 S.Ct. 240.

19. I therefore do not reach *Denis*'s second component of notice: whether Hussein should have been alerted to the consequences of his conduct. Arguably purchasing a firearm puts one on more notice of regulation, *see United States v. Freed,* 401 U.S. 601, 609, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *see also United States v. Int'l Minerals & Chem. Corp.,* 402 U.S. 558, 565, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) (sulfuric acid and hydrofluosilicic acid), than picking up a parcel of khat, a naturally occurring plant that is not itself banned. On the other hand, the Supreme Court found no constitutional notice

problem in an earlier drug statute that required no proof of knowledge that a defendant knew that he was selling an "inhibited drug." *United States v. Balint,* 258 U.S. 250, 254, 42 S.Ct. 301, 66 L.Ed. 604 (1922). There is also the question whether Hussein, as a Somalian immigrant, had less opportunity to be aware of the prohibition, or whether that matters for constitutional notice purposes. *See Papachristou v. City of Jacksonville,* 405 U.S. 156, 162–63, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (observing that while the law must give fair notice of prohibited conduct, "[i]n the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed," yet "[t]he poor among us, the minorities, the average householder are not in business and not alerted to the regulatory schemes of . . . laws"). The record before me and before the jury does not describe Hussein's knowledge or lack thereof except to reflect that he has been in this country for 7 or 8 years, that he speaks and reads some English, and that he has owned 2 cab companies and 5 or 6 cabs in Boston and Portland.

20. *Kolender,* 461 U.S. at 358, 103 S.Ct. 1855 (quoting *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)).

21. *Id.* at 358, 103 S.Ct. 1855 (quoting *Goguen,* 415 U.S. at 575 n. 7, 94 S.Ct. 1242).

2002, sent from London, England to the FedEx office in Portland, Maine. It arrived on March 22, 2002, and was picked up that afternoon by Hussein for ultimate distribution by Gani Mohamed. By then, surely, Hussein's khat must have been approaching or past the cathinone/cathine transition line.[22] The chemist testified that Hussein's khat contained a detectable amount of cathinone, but could not describe the quantity.[23] He failed to conduct tests that would determine if cathine was also present. There was no evidence whether cathinone or cathine ever completely disappears from khat.[24]

There are three different sentencing scenarios for possession of khat: the Schedule I listing for cathinone and sentences up to 20 years;[25] the Schedule IV listing for cathine and sentences up to 3 years;[26] and no criminality at all for khat that contains neither chemical. Because the chemist found a detectable, but unmeasurable, amount of cathinone in at least one of the khat stems or leaves,[27] Hussein will be sentenced under the strict provisions of Schedule I. But if a detectable though minute amount of cathinone remains indefinitely in khat, that fact in itself would seem to introduce an extraordinary opportunity for arbitrariness in prosecution charging decisions: the same conduct can be treated as innocent, subject to a 3–year sentence, or subject to a 20–year sentence. Or, if the government always selects the most serious charge (and, if a detectable amount of cathinone is present in khat indefinitely), the regulatory indication that khat is sometimes subject to a 3–year maximum or sometimes innocent is seriously misleading.[28] The record simply does not permit me to reach a conclusion.[29]

22. There was no evidence that anyone thought that the khat Gani Mohamed was selling packed the heavier wallop of cathinone (like amphetamines) rather than the somewhat more benign stimulant effect of cathine.

23. The precedents make clear that a detectable amount is all that is required for conviction. *United States v. Campbell*, 61 F.3d 976, 979 (1st Cir.1995); *United States v. Restrepo–Contreras*, 942 F.2d 96, 99 n. 1 (1st Cir.1991); *United States v. McHugh*, 769 F.2d 860, 868 (1st Cir.1985). That is so even though the prosecution is under 21 U.S.C. § 841(b)(1)(C) which, unlike subsections (A) and (B), does not use the word "detectable." *United States v. Killion*, 7 F.3d 927, 935 (10th Cir.1993); *see also United States v. Brough*, 243 F.3d 1078, 1080 (7th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 203, 151 L.Ed.2d 144 (2001).

24. The khat in Hussein's car, which necessarily came from an earlier shipment, contained detectable amounts of both cathinone and cathine.

25. 21 U.S.C. § 841(b)(1)(C).

26. 21 U.S.C. § 841(b)(2).

27. The DEA chemist testified that he took samples from the khat package, then mixed them all together for testing. As a result, there is no way to know whether the cathinone he detected came from only one stem or leaf, or was present throughout the package.

28. The Supreme Court has found no unconstitutionality in having two statutes that make the same conduct criminal but assign different penalties, thereby allowing prosecutors the discretion to decide under which one to prosecute. *United States v. Batchelder*, 442 U.S. 114, 122–26, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). The situation here seems materially different where the regulatory scheme tells citizens and others that there are three different actions with three different outcomes, one of them apparently not even criminal, yet all may actually involve the same conduct.

29. Sometime during the trial defense counsel provided to me without objection a copy of the underlying evaluation that the Department of Health & Human Services provided to the DEA before the DEA decided to list cathinone on Schedule I. He apparently obtained it through a Freedom of Information Act request. It says that "fresh khat may contain a hundred times more cathinone than

\* \* \* \* \* \*

I remain troubled by the government's failure to be clearer in its official regulations that possession of khat with intent to distribute is criminal,[30] especially since this is a vegetation that certain ethnic communities have traditionally used over the years. I recognize that this trial will provide future notice to many in Maine's Somalian community both through media coverage and through their attendance at the trial, but that is not the sort of notice that supports imprisoning this defendant. Nevertheless, the precedents of the United States Court of Appeals for the First Circuit and the United States Supreme Court require me to deny the motion for acquittal.

I therefore **ORDER** the preparation of a presentence report preliminary to sentencing.

dried material, which in turn shows an increased content of cathines." Food & Drug Administration. Basis for the Recommendation for Control of Cathinone into Schedule I of the Controlled Substances Act 9 (undated), *enclosed in* Letter from James O. Mason, Assistant Secretary for Health, Department of Health & Human Services, to Robert C. Bonner, Administrator, Drug Enforcement Administration (Nov. 5, 1992). That statement intimates that detectable amounts of cathinone may remain indefinitely, but it is certainly not definitive. Moreover, it was not presented to me as part of the record, and no arguments of judicial notice have been made.

30. As the defendant has argued, this regulatory scheme is different from that with which we are most familiar. Usually, both the natural substance and the problematic chemical are listed as prohibited (for example, marijuana and THC; peyote and mescaline). Moreover, not everything that contains a prohibited chemical is prosecuted when possessed; for example, possession of poppy seeds, which may contain such prohibited substances as morphine and codeine, is not subject to the drug laws. I recognize that when the final rule listing cathine as a controlled substance

was published in 1988, the DEA stated in "Supplementary Information" that it would treat khat the same as cathine. 53 Fed.Reg. 17,459 (May 17, 1988). But for some reason it still chose not to list khat. Similarly, when in 1993 it listed cathinone, it revised its earlier comments to indicate in "Supplementary Information" that it would treat khat with cathinone as if it were cathinone, and khat without cathinone but containing cathine as if it were cathine. Again, however, it failed to list khat itself. 58 Fed.Reg. 4316 (Jan. 14, 1993). While the statute at issue here is not facially ambiguous, and the regulations clearly list cathinone as a controlled substance, I am troubled that an ordinary person would have to consult the "legislative history" of the Federal Register to find mention of khat. *See Sabetti v. Dipaolo*, 16 F.3d 16, 17 (1st Cir. 1994) (" 'It is not enough,' we have explained, for the true meaning of the statute 'to be apparent elsewhere,' in extra-textual materials such as legislative history or analogous statutes. The idea is that ordinary individuals trying to conform their conduct to the law should be able to do so by reading the face of a statute—not by having to appeal to outside legal materials.") (quoting *United States v. Colon–Ortiz*, 866 F.2d 6, 9 (1st Cir.1989)).