PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WONDEMU GEBREEGZIABH ARGAW,
*Petitioner,*

v.

JOHN ASHCROFT, Attorney General,
*Respondent.*

No. 03-2436

On Petition for Review of an Order of
the Board of Immigration Appeals.
(A46-087-001)

Argued: September 30, 2004

Decided: January 31, 2005

Before MICHAEL and DUNCAN, Circuit Judges,
and Roger W. TITUS, United States District Judge
for the District of Maryland,
sitting by designation.

Petition for review granted; order of removal reversed by published
opinion. Judge Michael wrote the opinion, in which Judge Duncan
and Judge Titus joined.

## COUNSEL

**ARGUED:** Sidney Leighton Moore, III, Atlanta, Georgia, for Peti-
tioner. Jonathan F. Cohn, UNITED STATES DEPARTMENT OF
JUSTICE, Office of Immigration Litigation, Civil Division, Washing-
ton, D.C., for Respondent. **ON BRIEF:** Peter D. Keisler, Assistant

Attorney General, Civil Division, David V. Bernal, Assistant Director, Jennifer Paisner, UNITED STATES DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Civil Division, Washington, D.C., for Respondent.

---

**OPINION**

MICHAEL, Circuit Judge:

Wondemu G. Argaw, an alien with a green card, is subject to an order of removal, and he petitions for review of the decision of the Board of Immigration Appeals (BIA or the Board). The case arose when Argaw returned from a visit to Ethiopia in possession of khat, a plant whose leaves are chewed as a stimulant. The order of removal against Argaw stands on the BIA's legal determination that khat is a controlled substance. We lack jurisdiction to review an order of removal against an alien who is removable for committing certain criminal offenses, such as the importation of a controlled substance. *See* 8 U.S.C. § 1252(a)(2). We have jurisdiction, however, to determine whether the facts that would deprive us of jurisdiction are present. In this case, one of the jurisdiction-stripping facts — a controlled substance offense — is missing. Because khat is not listed as a controlled substance and it has not been established when khat might contain a controlled substance, Argaw's conduct did not amount to a criminal offense. Accordingly, we are not deprived of jurisdiction, and we reverse the order of removal.

I.

Argaw, a lawful permanent resident of the United States, returned to Washington Dulles Airport on November 7, 1998, after a two-month visit to Ethiopia, his native country. On his Customs Declaration form, Argaw checked a box indicating that he was bringing agricultural products into the United States. When the U.S. Customs Service inspected his luggage, agents found a quantity of khat, a traditional herbal stimulant widely used in East Africa and the lower Arabian peninsula. The Customs agents seized the khat, believing it was a controlled substance under U.S. law. Argaw, who speaks Amharic

and reads only a "little" English, J.A. 58, signed a second Customs form, entitled "Agreement to Pay Monetary Penalty," in which he agreed to pay a penalty of $500 for failing to declare a controlled substance, listed as 6.65 pounds of khat. He did not have the assistance of an interpreter when he signed the penalty form.

Later that same day, an Immigration and Naturalization Service (INS) agent took a sworn statement from Argaw with the assistance of an interpreter. According to Argaw, he was carrying five or six bunches of khat, or about a handful, that he had bought in Ethiopia for the equivalent of approximately sixteen U.S. dollars. The khat was to be a gift for family and friends in the United States. Argaw insisted he did not know that khat was illegal in this country. Finally, Argaw said he had other "twig and leaf" material, J.A. 96, used for making a fermented drink, that the Customs agents mistook for khat.

The INS initiated removal proceedings against Argaw. He was charged as (1) an arriving alien who admits committing acts that constitute the essential elements of a violation of a controlled substances law, in this case the unlawful importation of such a substance, and as (2) an arriving alien who the INS has reason to believe is an illicit trafficker in a controlled substance. 8 U.S.C. § 1182(a)(2)(A)(i)(II); 21 U.S.C. § 952; 8 U.S.C. § 1182(a)(2)(C) (1999) (amended 2000). Argaw's attempted importation of the khat was the basis for the charges. Khat, however, is not listed as a controlled substance under the Controlled Substances Act (CSA). *See* 21 U.S.C. § 812; 21 C.F.R. § 1308.11-15. Two chemicals associated with khat, cathinone, a Schedule I controlled substance, and cathine, a Schedule IV controlled substance, are listed as controlled substances under the CSA. *See* 21 U.S.C. § 812; 21 C.F.R. § 1308.11(f)(3); 21 C.F.R. § 1308.14(e)(1). Argaw's khat was never analyzed to determine whether it contained either cathinone or cathine.

The central issue in the proceedings before the immigration judge and the BIA was whether khat is a controlled substance or the equivalent. The immigration judge, after noting that federal regulations list cathinone as a controlled substance, *see* 21 C.F.R. § 1308.11(f)(3), concluded "that cathinone is khat." J.A. 38. This led the judge to determine that Argaw was removable on both grounds asserted by the INS. On appeal the BIA "t[ook] administrative notice of the fact that

khat is an East African plant containing Cathinone," J.A. 5, and concluded that khat is the legal equivalent of the controlled substance, cathinone. The Board dismissed Argaw's appeal, noting that he was removable as charged. Thereafter, Argaw filed a petition for review in this court.

## II.

Our power to review a final order of removal is limited by 8 U.S.C. § 1252(a)(2). This section provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in" § 1182(a)(2), among others. 8 U.S.C. § 1252(a)(2)(C). Section 1182(a)(2) includes the grounds for removal alleged in this case: the alien admitted acts that constitute the essential elements of a controlled substance offense, *id.* § 1182(a)(2)(A)(i)(II), and the INS had reason to believe the alien was a trafficker in a controlled substance, *id.* § 1182(a)(2)(C). We are therefore without jurisdiction if two facts exist: the petitioner is an alien, and he committed one of the covered offenses. The provision that limits our jurisdiction, § 1252(a)(2)(C), "does not declare that the agency's determinations of alienage and deportability are final and unreviewable. It merely says there will be no [review]" when the two jurisdiction-stripping facts are present. *Hall v. INS*, 167 F.3d 852, 855 (4th Cir. 1999) (citation omitted). We retain jurisdiction to determine whether these facts are present. *Lewis v. INS*, 194 F.3d 539, 541-42 (4th Cir. 1999).

It is undisputed that Argaw is an alien. The second fact that determines jurisdiction is contested. It is whether Argaw is removable because he admitted to acts that constitute the essential elements of a controlled substance offense or because the INS has reason to believe he is a trafficker in a controlled substance. Argaw and the Attorney General agree that resolution of this jurisdictional fact requires us to determine whether Argaw's khat is a controlled substance under U.S. law. Because the INS does not administer the criminal laws relating to controlled substances, we do not defer to the BIA's interpretation of those laws. *Sutherland v. Reno*, 228 F.3d 171, 174 (2d Cir. 2000). We therefore consider de novo whether khat is a controlled substance. *See id.*

### III.

### A.

According to the Attorney General, the second jurisdiction-stripping fact is established by Argaw's admission that he (1) knowingly and willfully (2) imported (3) a controlled substance, the essential elements of a violation of 21 U.S.C. § 952. *See* 21 U.S.C. § 952 (outlawing the importation of controlled substances); *United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir. 1984) (noting that scienter is an essential element of a § 952 crime). Again, the main issue is whether khat is a controlled substance or the equivalent. Khat is not a controlled substance, and it was not established that Argaw's khat contained either cathinone or cathine, controlled substances that would have rendered the khat illegal. In their decisions both the immigration judge and the BIA held that khat is the legal equivalent of cathinone, a Schedule I controlled substance. Neither decision discussed cathine, the Schedule IV substance. Argaw does not dispute that khat contains cathinone when it is first harvested, but he argues that within seventy-two hours it may not contain any cathinone at all. In determining that khat is the legal equivalent of cathinone, the immigration judge relied on the INS's submission of a printout from the website of an organization called "The Life Education Center." The printout stated, apparently without elaboration, that khat contains cathinone. Based entirely on this unauthenticated document, the immigration judge concluded that "cathinone is khat." J.A. 38. On appeal the BIA did not rely on the internet printout. Instead, the BIA took "administrative notice of the fact that khat is an East African plant containing Cathinone." J.A. 5. The BIA based this determination on three sources, two court opinions and one supplementary information statement issued by the Drug Enforcement Administration (DEA). These sources are not sufficient to establish that khat always contains cathinone.

The first opinion cited by the BIA, *United States v. Hofstatter*, 8 F.3d 316 (6th Cir. 1993), dealt with a prosecution for the manufacture of several stimulants, none of which was related to khat. In recounting the facts, the court noted in passing that a search of one defendant's car turned up, among other things, documents that "described 'khat' (an East African plant containing cathinone)." *Id.* at 320. This was the

opinion's only reference to khat. In the second opinion cited by the BIA, *United States v. Hussein*, 230 F. Supp. 2d 109 (D. Me. 2002), *aff'd*, 351 F.3d 9 (1st Cir. 2003), the district court assessed the evidence in a prosecution for possession with intent to distribute a substance containing cathinone, a controlled substance. According to the court, the record "indicate[d] that cathinone is present in fresh khat, but is highly unstable and degrades rapidly . . . within 72 hours after the khat leaf is picked." *Id.* at 114. The court noted specifically that "[t]here was no evidence whether cathinone or cathine ever completely disappears from khat." *Id.* at 115. Last, the BIA relied on the DEA's supplementary information statement issued when the agency published the rule that added cathinone to the federal schedules of controlled substances. According to the statement, "*[w]hen* khat contains cathinone, khat is a Schedule I substance." 58 Fed. Reg. 4317 (1993)(emphasis added). This tends to contradict, rather than support, the BIA's apparent conclusion that khat always contains cathinone. Indeed, none of the sources cited by the BIA supports the proposition that khat and cathinone are legal equivalents or that khat always contains cathinone. If anything, these sources suggest that cathinone quickly disappears from khat, perhaps as soon as seventy-two hours after the leaf is harvested.

The Attorney General attempts to brush aside "the fact that [the BIA] may have erred in finding khat a controlled substance because it always contains cathinone." Respondent's Brief at 23. According to the Attorney General, two new arguments, neither of which was presented in the administrative proceedings, support his claim that khat is a controlled substance or the legal equivalent. We will consider these arguments because they speak to the legal question of khat's status under the laws dealing with controlled substances. First, the Attorney General argues that khat is a controlled substance because the DEA has demonstrated an intent to regulate it as a Schedule IV substance. Second, he argues that khat is the equivalent of a controlled substance because it always contains cathine. To support these arguments, the Attorney General relies mainly on two supplementary information statements that accompanied the DEA's final rules scheduling cathinone and cathine. The supplementary information statement attached to the May 17, 1988, rule that placed cathine in Schedule IV said: "khat will be subject to the same Schedule IV controls as cathine." 53 Fed. Reg. 17,460 (1988). The statement accom-

panying the rule placing cathinone in Schedule I on January 14, 1993, referred to the earlier statement: "In a previously published final rule, the [DEA] Administrator stated that khat will be subject to the same Schedule IV controls as cathine." 58 Fed. Reg. 4,317 (1993).

According to the Attorney General, these supplementary information statements indicate that the DEA "placed khat itself . . . in the Schedule IV category of controlled substances." Respondent's Brief at 20. The statements may indicate that the DEA planned to list khat in Schedule IV; however, the statements were not incorporated into the schedules appearing in the Code of Federal Regulations. Moreover, the DEA has never proposed to add khat to the list of controlled substances in accordance with the formal rulemaking procedures outlined in the Controlled Substances Act. *See* 21 U.S.C. § 811. Khat, in short, is not a controlled substance because the schedules themselves contain no reference to the plant. *See* 21 C.F.R. § 1308.11-15.

Nothing in the DEA's two statements of supplementary information substantiates the Attorney General's argument that khat always contains cathine. The statement attached to the 1988 rule refers to cathine as "one of the psychoactive substances found in khat," 53 Fed. Reg. 17,460 (1988), but neither statement indicates that cathine is always present in khat. Indeed, the Attorney General fails to cite any authority to establish that cathine never disappears from khat. The few published cases discussing khat indicate that without scientific testing on a case-by-case basis, it cannot be determined when cathine or cathinone appears in khat. The First Circuit, in reviewing an appeal from a cathinone conviction, observed that "[t]he evidence presented at trial does not disclose whether either cathinone or cathine ever completely disappears from khat." *United States v. Hussein*, 351 F.3d 9, 11 (1st Cir. 2003). An Ohio appellate court likewise noted that it was not clear "whether cathinone or cathine ever completely disappear[s] from khat." *Ohio v. Samatar*, 787 N.E.2d 691, 703 (Ohio App. 2003). At this juncture, there is no reasonable basis for the conclusion that khat always contains cathine.

Although Argaw admitted to importing (and possessing) khat, khat is not listed as a controlled substance. Moreover, there is no evidence that the khat Argaw imported contained either controlled substance, cathinone or cathine. For these reasons, the Attorney General has

failed to establish the jurisdiction-stripping fact that Argaw admitted to the knowing importation of a controlled substance, a violation of 21 U.S.C. § 952. Because the controlled substance element of the § 952 crime has not been established, we need not consider the scienter element.*

### B.

The alternative jurisdiction-stripping fact would be that the INS had reason to believe Argaw was an illicit trafficker in a controlled substance. *See* 8 U.S.C. § 1182(a)(2)(C). As our discussion in part III.A, *supra*, reveals, khat is not a controlled substance, and khat's chemical properties are not sufficiently known to establish, without testing, whether a particular batch of khat contains either controlled substance, cathinone or cathine. Argaw's khat was never tested. Under these circumstances the INS could not have reason to believe that Argaw, who admittedly imported khat, was an illicit trafficker in a controlled substance.

### C.

One of the two facts necessary to deprive us of jurisdiction is missing, so we have jurisdiction to review the final order of removal issued against Argaw. Because it was not established either that Argaw imported a controlled substance or that the INS had reason to believe he was an illicit trafficker in a controlled substance, we grant Argaw's petition for review and reverse the order of removal.

---

*In his brief the Attorney General asserts that Argaw also "admitted to the essential elements of an offense relating to khat" when he agreed to pay a civil penalty for bringing khat into the United States without declaring it, in violation of the Tariff Act, 19 U.S.C. § 1497. Respondent's Brief at 24. This could not take away our jurisdiction because a § 1497 violation was not the basis for the removal order against Argaw. Even if a removal order based on a § 1497 violation could be shielded by the jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(C), we are not deprived of jurisdiction unless the § 1497 violation was "actually the basis, or one of the bases," of the order. *Yousefi v. INS*, 260 F.3d 318, 325 (4th Cir. 2001).

*PETITION FOR REVIEW GRANTED*;
*ORDER OF REMOVAL REVERSED*