**Abdigani Faisal HUSSEIN, Petitioner,**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

**No. 07–1211.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 2, 2008.

Filed: April 4, 2008.

Daniel M. Pell, York, PA, for Abdigani Faisal Hussein.

Richard M. Evans, David E. Dauenheimer, Kathryn L. Deangelis, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Attorney General of the United States.

Before: BARRY, SMITH and HARDIMAN, Circuit Judges.

## OPINION

PER CURIAM.

Petitioner Abdigani Faisal Hussein, a native and citizen of Somalia, was admitted to the United States as a refugee on or about November 13, 1996, and his immigration status was adjusted on December 18, 1997 to that of a lawful permanent resident under Immigration & Nationality Act ("INA") § 209, 8 U.S.C. § 1159. On February 6, 2003, he was convicted pursuant to a plea of guilty in United States District Court for the District of Maine of possession with intent to deliver a Schedule I controlled substance, cathinone, in violation of 21 U.S.C. § 841(a)(1). Cathinone is a chemical component of khat, a leafy substance smuggled into the United

States from Africa, and chewed or brewed into a tea. Hussein was sentenced to a year of probation. His conviction was affirmed on appeal by the Court of Appeals for the First Circuit, *United States v. Hussein,* 351 F.3d 9 (1st Cir.2003),[1] and it has never been invalidated.

Hussein was served with a Notice to Appear, charging him with removability under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(B), 8 U.S.C. 1101(a)(43)(B) (illicit trafficking in a controlled substance, including a drug trafficking crime). The government later lodged an additional charge of removability under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i) (alien has been convicted of a controlled substance offense). Hussein was found removable as charged, and he requested asylum, withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under the Convention Against Torture. An Immigration Judge denied those applications and ordered his removal to Somalia, and Hussein appealed to the Board of Immigration Appeals.

In a decision dated December 21, 2006, the Board dismissed the appeal, rejecting each of Hussein's contentions. Hussein argued that, because khat, the substance actually found in his possession when he was arrested, is not listed as a controlled substance under the Controlled Substances Act, his conviction was not an aggravated felony. Relying on the First Circuit's legal determinations in Hussein's case, the Board held that Hussein's 2003 conviction was an aggravated felony under

immigration law, because the khat found in his possession contained detectible amounts of cathinone, rendering it a Schedule I controlled substance and subject to the same prohibitions as the chemical itself under 21 C.F.R. § 1308.11(f)(2) (1993). Furthermore, having been convicted of a drug trafficking aggravated felony, Hussein was statutorily ineligible for asylum under INA § 208(b)(2)(A)(ii), 8 U.S.C. § 1158(b)(2)(A)(ii), as well as cancellation of removal under INA § 240A(a)(3), 8 U.S.C. § 1229b(a)(3).

The Board also held that Hussein's aggravated felony drug trafficking conviction presumptively constituted a conviction for a "particularly serious" crime, which precluded his eligibility for withholding of removal under INA § 241(b)(3) and the Convention Against Torture, unless he could show "extraordinary and compelling circumstances," *see Matter of Y–L–,* 23 I. & N. Dec. 270 (A.G.2002). Observing that the First Circuit had noted, in addressing the scienter requirement, *Hussein,* 351 F.3d at 20, that Hussein was a successful businessman and not a recent immigrant, he knew that khat was illegal and that the recruitment of multiple couriers was involved, it was not his first trip to retrieve a shipment, and he knew that the arrangements for shipping and retrieving the packages, including mislabeling and phony addresses, were designed to avoid detection, the Board held that he had not rebutted the presumption insofar as his involvement in the drug activity was not merely peripheral. Therefore, he could not benefit from the exception to the per se finding

1. The First Circuit held that Hussein's prosecution pursuant to an unambiguous regulation proscribing possession with intent to distribute "any material containing cathinone" did not violate due process, he could lawfully be found guilty of having knowingly possessed

and intended to distribute a controlled substance even if he did not know the exact nature of the drug as long as he knew that he possessed an illegal drug, and the evidence was sufficient to prove *scienter. Id.* at 14–21.

that his drug trafficking conviction constituted a "particularly serious" crime.

Notwithstanding the aggravated felony conviction, Hussein was eligible for deferral of removal under the Convention Against Torture, if pursuant to 8 C.F.R. § 208.16(c)(2), he could prove that it is more likely than not that he will be tortured in Somalia if he returns. However, the Board concluded that his evidence was insufficient. Hussein testified at his removal hearing that, on January 1, 1991, his uncle and half-brother were shot and killed by members of the Hawiye ethnic group, a clan affiliated with the United Somali Congress ("USC"), and he also was shot and wounded. More than 10 Hawiye showed up at his home looking for his father, and when they could not find him, shot the others.[2] These individuals were seeking revenge because Hussein's father, an air traffic controller who worked for the government of Mohamed Siad Barre, had reported an attempt by Mohammed Farrah Aideed's brother to escape Somalia.[3] Hussein was taken to a United Nations refugee camp where his bullet wounds were treated. In addition, he is a member of the Tuni ethnic group, a subclan of the Rahanweyn, and Tunis are disrespected by other ethnic groups and used for slave labor. His tribe is a small one and must rely on protection from dominant tribes. There is no part of the country where he would be able to live safely because the Tunis control no regions of the country. Moreover, he is a non-religious Shiite and therefore a target of Islamic zealots. The

IJ found Hussein's testimony credible; the Board did not disturb this finding. The government established on cross-examination that the Tunis live where the Bantu live, in the south.[4]

In addressing the torture claim, the Board reviewed the contents of the State Department's Bureau of Democracy, Human Rights, and Labor Report on Country Conditions for Somalia for 2005, and commented at length on the disturbing number of deaths since 1991 resulting from interfactional and interclan fighting, factional militia fighting for political power and control of territory, revenge reprisals, and other criminal activities. The Board concluded, however, that lawlessness in Somalia alone cannot provide a basis for relief because the CAT does not protect individuals from private, nongovernmental harm nor harm from entities that a government is unable to control. The fact that his clan is subject to the predations of the dominant clans does not rise to the level of torture. Moreover, there was no evidence that any member of the Hawiye clan is still seeking revenge against his father for something that happened 15 years ago, and would now look to torture *Hussein* as a means of extracting that revenge. Finally, Hussein had not shown that the Hawiye clan, or any dominant clan, intended to torture him at the instigation of, or with the consent or acquiescence of Somali authorities, so as to bring his claim for relief within the ambit of the CAT. *See Tarrawally v. Ashcroft,* 338 F.3d 180, 188 n. 10 (3d Cir.2003) (citing

---

**2.** Hussein's father managed to escape prior to the shootings and now lives in the United States.

**3.** Mohammed Farrah Aideed was a "warlord" and Chairman of the United Somali Congress, which captured Mogadishu in 1991. He was a main target of Operation Restore Hope in 1993.

**4.** According to the State Department's country report, there has been no central government since 1991, but the Transitional Federal Government, which operates in the south, is the internationally recognized government of Somalia. The Bantu and Tuni live in the south where the Transitional Federal Government operates.

*Lukwago v. Ashcroft,* 329 F.3d 157, 183 (3d Cir.2003)). Thus, he was not entitled to deferral of removal.

Hussein has petitioned for review. Although we generally lack jurisdiction under 8 U.S.C. § 1252(a)(2)(C) to review final orders of removal against aliens who have been found removable based on an aggravated felony, we retain limited jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to consider constitutional issues and questions of law. We review these questions de novo, with deference to the Board's permissible interpretation of the INA and immigration regulations. *See Kamara v. U.S. Attorney General,* 420 F.3d 202, 211 (3d Cir.2005). Where, as here, the Board has issued a decision on the merits, we review only the Board's decision. *Lie v. Ashcroft,* 396 F.3d 530, 534 n. 3 (3d Cir.2005).

█ Hussein raises three issues for review. First, he contends, in a very general fashion, that his conviction is invalid as a violation of the separation of powers doctrine, because only Congress can create a crime under this doctrine and the Presentment Clause, Article 1, § 7, cl.2. *See Clinton v. City of New York,* 524 U.S. 417, 440, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (invalidating the line-item veto as impermissible delegation of legislative power to Executive Branch). Cathinone is not listed in any of the schedules of the Controlled Substances Act, but, rather, is listed in temporary schedules by the Drug Enforcement Agency ("DEA") under delegated authority to the Attorney General and thus the DEA.

We cannot consider this argument on the merits because it constitutes an impermissible collateral attack on Hussein's conviction, *see Drakes v. Immigration & Naturalization Serv.,* 330 F.3d 600, 603 (3d Cir.2003). However, we note that this nondelegation argument was squarely rejected by the United States Supreme Court in *Touby v. United States,* 500 U.S. 160, 165–67, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991). *Touby* held that Congress has set forth in 21 U.S.C. § 811(h) adequate principles to constrain the Attorney General's discretion to schedule controlled substances on a temporary basis. The nondelegation doctrine does not prevent Congress "from seeking assistance, within proper limits, from its coordinate Branches." *Id.* Furthermore, the Attorney General is authorized to sub-delegate his temporary scheduling powers to the Drug Enforcement Agency pursuant to 28 C.F.R. § 0.100(b). *Id.* at 169, 111 S.Ct. 1752. If the Attorney General should exceed his authority, the courts "can always 'ascertain whether the will of Congress has been obeyed,'" *Immigration & Naturalization Serv. v. Chadha,* 462 U.S. 919, 953 n. 16, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (quoting *Yakus v. United States,* 321 U.S. 414, 425, 64 S.Ct. 660, 88 L.Ed. 834 (1944)), "and can enforce adherence to statutory standards," *Id.* Nothing in *Clinton v. City of New York,* 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393, which concerns only the Line Item Veto Act, appears to us to undermine this longstanding principle that the Attorney General acts in a presumptively Art. II capacity when he administers the Controlled Substances Act, *see Touby,* 500 U.S. at 165–67, 111 S.Ct. 1752, and because Hussein failed to even mention *Touby* in his brief, nothing more need be said.

Hussein raises no further challenges to the Board's determination that his 2003 conviction was an aggravated felony under immigration law, because the khat found in his possession contained detectible amounts of cathinone, rendering it a Schedule I controlled substance and subject to the same prohibitions as the chemical itself under 21 C.F.R. § 1308.11(f)(2)

(1993).[5]

■ Hussein next contends that his conviction under 21 U.S.C. § 841(a)(1) for possession with intent to deliver is not "particularly serious" so as to bar him from withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture. He contends that his testimony at the removal hearing established that he did not know that khat was illegal, he received no money for picking up the package, and no one was hurt, nor were any children involved. He argues that, in relying on the First Circuit's published decision with respect to his level of sophistication, the Board impermissibly engaged in fact-finding in violation of 8 C.F.R. § 1003.1(d)(3)(iv), and substituted the judgment of the First Circuit for its own. Furthermore, he argues, evidence adduced at a criminal trial is not made part of the record by appending an appellate court decision to the Administrative Record. Under 8 C.F.R. § 1003.1(d)(3)(iv), except for taking notice of current events or the contents of official documents, the Board may not engage in fact-finding.

We have jurisdiction to address whether the Board misapplied the law in determining that Hussein's drug trafficking conviction, for which he received only a term of probation, was "particularly serious."

*Alaka v. U.S. Attorney General,* 456 F.3d 88, 104 (3d Cir.2006). Individuals seeking to obtain withholding of removal may not do so if they are deemed by the Attorney General to have committed a "particularly serious" crime. *See Lavira v. U.S. Attorney General,* 478 F.3d 158, 161 (3d Cir. 2007) (citing 8 U.S.C. § 1231(b)(3)(ii)). An alien who has been convicted of an aggravated felony for which he has been sentenced to an aggregate term of imprisonment of at least 5 years is considered to have committed a "particularly serious" crime. 8 U.S.C. § 1231(b)(3)(iv). Insofar as Hussein was sentenced to probation, his conviction does not disqualify him under this provision. In *Alaka,* 456 F.3d at 104–05, we held that an offense must be an aggravated felony to be considered a "particularly serious" crime, and in *Matter of Y–L–,* 23 I. & N. Dec. 270, the Attorney General took the position that a drug trafficking conviction is presumptively "particularly serious." Accordingly, Hussein's conviction is presumptively "particularly serious."

In *Matter of Y–L–,* 23 I. & N. Dec. 270, the Attorney General suggested, while not setting out the "precise boundaries," that the following factors, if all of them have been established, could overcome the presumption that a drug trafficking crime is "particularly serious," and, in a rare case,

**5.** That determination in any event appears correct. The shipment of khat Hussein sought to retrieve from the Federal Express office in Portland was tested and found to contain detectable amounts of cathinone. *Hussein,* 351 F.3d at 12. The Controlled Substances Act ("CSA") makes it illegal for any person knowingly to possess a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1), and that, for purposes of the statute, a controlled substance is one listed in Schedules I through IV, *see* 21 U.S.C. § 812 (codifying the schedules). Neither cathinone nor cathine, the chemical building blocks of khat, appear in any of the schedules. However-

er, the regulations promulgated after passage of the CSA and published in the Code of Federal Regulations have expressly classified cathinone as a Schedule I controlled substance, 21 C.F.R. § 1308.11(f)(2) (1993), and cathine as a Schedule IV controlled substance, *id.* § 1308.14(e) (1988). Thus, cathinone and cathine are controlled substances. The regulations further provide that "any material, compound, mixture, or preparation which contains" cathinone is itself a Schedule I controlled substance and is subject to the same prohibitions as the chemical itself, 21 C.F.R. § 1308.11(f)(2).

demonstrate extraordinary and compelling circumstances. *Id.* at 276–77. Those circumstances include when only a small quantity of drugs is involved, when only a modest amount of money has been paid for the drugs, when the alien has merely peripheral involvement in the criminal activity or conspiracy, when no violence is involved, and when juveniles are not harmed. *Id.* However, the Attorney General also said that "a drug 'courier' plays more than a sufficiently active part in a distribution conspiracy to render his conviction a 'particularly serious crime.' " *Id.* at 278.

The Board now reviews the immigration judge's findings of fact for clear error. *See Chavarria v. Gonzalez,* 446 F.3d 508, 516 (3d Cir.2006) (citing 8 C.F.R. § 1003.1(d)). Except for taking notice of current events and the contents of official documents, if the Board cannot resolve the appeal without further fact-finding, a remand is required. 8 C.F.R. § 1003.1(d)(3)(iv).[6] The question whether the Board may take notice of extra-record adjudicative facts contained in a published opinion of a federal court of appeals is not straightforward. The Board generally may take notice only of extra-record legislative facts, *see Gebremichael v. Immigration & Naturalization Serv.,* 10 F.3d 28, 37 & n. 25 (1st Cir.1993), but "some courts have suggested that the propriety of official notice turns on whether the extra-record fact is beyond reasonable dispute," *id.* at n. 26 (collecting cases).

We conclude that the Administrative Record supports the Board's determination that Hussein's circumstances are not extraordinary and compelling, without the need to rely on the First Circuit's published decision, because the IJ made the required findings that support the determination that his involvement was not merely peripheral, and that he was a drug courier in a conspiracy. The IJ found that the amount of drugs at issue was not very small, Hussein's role was not minor, it was key, and, although he received no money, he received a number of bundles of khat in payment. (Immigration Judge's Decision, at 9.) In fact, the removal hearing testimony establishes that the amount could be measured in "kilos," it was the second time Hussein had picked up khat for Mr. Mohamed Gani of Columbus, Ohio, and he knew that others were acting as couriers for Mr. Gani, who never picked up the packages himself, A.R. 138–39, and, it does not establish that Hussein did not know that he was dealing with an illegal substance.

In short, the inescapable conclusion is that Hussein acted as a drug courier. In reaching its decision, the Board specifically noted that Hussein presented no extraordinary or compelling circumstances "either at the hearing or on appeal" to rebut the presumption. We are thus satisfied that the Board did not engage in fact-finding, and simply concluded that the IJ did not clearly err in determining the facts relevant to *Matter of Y–L–'s* extraordinary and compelling circumstances test.[7] Ac-

6. The regulation provides:

(iv) Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals. A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If fur-

ther factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge or, as appropriate, to the Service.
*Id.*

7. Even if the Board impermissibly found that Hussein was a "successful businessman" based on an adjudicative fact, that finding was not necessary to the *Matter of Y–L–* analy-

cordingly, the Board did not err in concluding that Hussein's drug trafficking crime was "particularly serious," rendering him ineligible for withholding of removal under INA § 241(b)(3) and the Convention Against Torture.

■ Finally, Hussein contends that he met his burden of proof under CAT and is entitled to deferral of removal because he established that he and his family already have been the victims of a revenge killing by the Hawiye clan (and, in fact, he previously had refugee status), and the Country Report establishes a lawless society. In addition, the Somali government turns a "blind eye" towards torture of minority clan members by majority clans, because the Transitional Federal Government has in its ranks former warlords. *See Silva–Rengifo v. U.S. Attorney General,* 473 F.3d 58, 69 (3d Cir.2007)("[T]he Senate could hardly have made it clearer that it did not intend 'acquiescence' in the Convention to require a showing that the government in question was actually aware of the conduct that constitutes torture. Rather, an alien seeking relief under the CAT can establish that the government in question acquiesces to torture by showing that the government is willfully blind to a group's activities."). Furthermore, nothing is ever forgotten in Somalia and thus he is still at risk of being killed by members of the Hawiye tribe who seek revenge. Added to all of this, Islamic zealots are applying Sharia law, including torture and mutilation, in running the courts in and around Mogadishu, and they target non-observant Shiites like himself for prosecution simply for failing to pray the required number of times each day.

The regulations enacting the CAT allow for an alien who has been convicted of a "particularly serious" crime to seek protection only in the form of deferral of removal. 8 C.F.R. § 1208.17(a). Because of 8 U.S.C. § 1252(a)(2)(C), we are limited, with respect to the denial of relief under the CAT, to reviewing only "pure questions of law" and "issues of application of law to fact, where the facts are undisputed and not the subject of challenge." *Kamara,* 420 F.3d at 211. We may not address whether factual conclusions about the likelihood of torture are supported by substantial evidence. *See Hamid v. Gonzales,* 417 F.3d 642, 647 (7th Cir.2005).

In order to establish a claim for deferral of removal, the alien has the burden of establishing that it is more likely than not that he would be subject to torture if returned to his home country. *Kamara,* F.3d at 212–13 (citing 8 C.F.R. § 208.16(c)(2)). *See also Auguste v. Ridge,* 395 F.3d 123, 151 (3d Cir.2005). The Board was required to consider all objective evidence relevant to the possibility of future torture including, but not limited to evidence that Hussein suffered past torture, evidence that he could relocate to a part of Somalia where he is not likely to be tortured, evidence of "gross, flagrant or mass violations of human rights" in Somalia, and other relevant information about Somalia's country conditions. 8 C.F.R. § 1208.16(c)(3)(i–iv).

For purposes of the CAT, torture has the following definition:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her

---

sis, because the IJ found ample other facts to establish that Hussein acted as a drug courier in a drug importation scheme. Furthermore, the fact that Hussein was not a recent immi-

grant when he committed the offense was something the Board could take notice of simply by doing the math.

or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). Torture involves intentional governmental acts; acts by private individuals not acting on behalf of the government do not provide a basis for relief under the CAT. *In re: J–E–*, 23 I. & N. Dec. 291, 299 (BIA 2002). The requirement that torture be inflicted by or with the acquiescence of a public official is met if the government is willfully blind to a group's activities whether or not it is actually aware of the conduct that constitutes torture. *See Silva–Rengifo*, 473 F.3d at 69. However, a CAT applicant will not be entitled to relief if the evidence shows that the government is in continuous opposition to the organization's activities. *Lukwago*, 329 F.3d at 183.

We conclude that the BIA stated the proper legal standard in its opinion concerning Hussein's application for relief, *see* 8 *C.F.R.* § 1208.18(a); *Auguste*, 395 F.3d at 151; *Lukwago*, 329 F.3d at 183; *In re: J–E–*, 23 I. & N. Dec. at 299, and that it properly took into consideration all of his objective evidence, paying due regard to the fact that he suffered past torture in concluding that he did not meet his burden of proof. Hussein's contention that his father is still sought by the Hawiye, and *he* is thus vulnerable some 15 years later (the assumption being that the revenge wreaked by the Hawiye when his uncle and half-brother were shot and killed in 1991 was not enough) was unsupported, and thus the Board could properly conclude that this circumstance was insuffi-

cient to show that future torture was more likely than not if he is removed to Somalia. His assertion that, because he is an unprotected Tuni and non-religious Shiite, he is also vulnerable to the Hawiye clan, the United Somali Congress, and generally to Islamic fundamentalists, is general in nature, and thus the Board could properly conclude that it added little to his case for relief. Furthermore, the Board could properly determine that Hussein did not show that militias or other clans intend to torture him at the instigation of, or with the consent and acquiescence of, Somali authorities, because he made only unsupported references to the general impunity enjoyed by militia members and the police. *Lukwago*, 329 F.3d at 183 (CAT applicant not entitled to relief if evidence shows that government is in continuous opposition to organization's activities). We, therefore, find no basis within the limited scope of our jurisdiction to find that the Board erred. *Hamid*, 417 F.3d at 647.

For the foregoing reasons, we will deny the petition for review.