# United States Court of Appeals
## For the First Circuit

No. 03-1310

UNITED STATES OF AMERICA,

Appellee,

v.

ABDIGANI HUSSEIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya, Circuit Judge,
and Siler,* Senior Circuit Judge.

Sidney Leighton Moore for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

October 30, 2003

_____

*Of the Sixth Circuit, sitting by designation.

**SELYA, Circuit Judge.** A jury found defendant-appellant Abdigani Hussein guilty of knowingly possessing and intending to distribute khat, a plant naturally containing the chemical stimulant cathinone (a Schedule I controlled substance), in violation of section 841(a)(1) of the Controlled Substances Act (CSA). The district court refused to set aside the verdict and sentenced Hussein to one year's probation. Hussein appeals, asserting that (i) the CSA did not afford him fair warning that possession of khat was illegal, and (ii) the government did not sufficiently prove his knowing possession of a controlled substance.

Hussein's first assignment of error does not withstand close scrutiny. His second entails a more complicated analysis, in the course of which we break new ground. There is no proof that Hussein knew what cathinone was or that he was dealing with it. Nevertheless, the evidence suffices to show that he knew — in a general sense — that he was dealing with a controlled substance. We hold that this is enough: the government can satisfy the scienter requirement of section 841(a)(1) notwithstanding the fact that the accused was unaware of the drug's precise identity so long as it is able to prove beyond a reasonable doubt that he knew that he was dealing with a substance regulated by federal drug abuse laws.

Having found Hussein's arguments wanting, we affirm his conviction.

## I. BACKGROUND

Following the conventional praxis, we recount the facts in the light most favorable to the verdict, consistent with record support. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Noah, 130 F.3d 490, 493 (1st Cir. 1997). The story began on March 22, 2002, when three packages marked "Documents" arrived at the Federal Express office in Portland, Maine. Noticing that they were wet, Federal Express employees opened them and saw green, leafy plants. Mistaking the contents for marijuana, the employees summoned representatives of the federal Drug Enforcement Administration (DEA).

After testing, DEA agents determined that the leafy substance was not marijuana but khat (Catha edulis), a plant grown in East Africa and the Arabian peninsula. The leaves of this plant are traditionally chewed or brewed into tea to produce a stimulant effect on the central nervous system. When first cut, the leaves contain the chemical stimulant cathinone, which over time degrades into the milder stimulant cathine. The evidence presented at trial does not disclose whether either cathinone or cathine ever completely disappears from khat.

DEA agents planned a controlled delivery and watched as the appellant picked up one of the three boxes at the Federal

Express office.  The appellant's arrest followed.  Evidence at trial established that the shipment of khat contained detectable amounts of cathinone (no tests were run for cathine).  More khat was discovered in the appellant's car, and that material contained detectable amounts of both chemicals.

During post-arrest questioning, the appellant admitted knowing that the box he essayed to retrieve contained khat.  He also admitted knowing that khat acts as a stimulant, telling the agents that "when you chew it . . . you stay awake, like coffee." When the agents inquired whether he knew that possessing khat was illegal, he replied:  "No, not really."

The ensuing interrogation uncovered the existence of an elaborate distribution scheme (the mechanics of which were known to the appellant).  The appellant was sent to retrieve the package by a friend, one Gani Mohamed, who peddled khat to the Somali community in Lewiston, Maine for $6 to $8 a bundle.  Mohamed had used the appellant's former address as the intended destination when arranging to ship the package and gave the appellant the Federal Express tracking number to facilitate the retrieval.  This was the appellant's second or third such mission (the record is indistinct on this point), and the way in which it was structured formed part of a pattern.  Mohamed routinely used fake addresses as intended destinations for khat shipments and recruited different

-4-

individuals to pick up the packages.  Mohamed promised to pay the appellant in khat for his services (as he had done before).

The government charged the appellant with "knowingly . . . possess[ing] with intent to distribute a substance containing cathinone, a Schedule I controlled substance," in violation of 21 U.S.C. § 841(a)(1).  The case was tried to a jury.  At the close of all the evidence, the appellant moved for judgment of acquittal. See Fed. R. Crim. P. 29.  The court reserved decision and the jury found the appellant guilty as charged.

In due season, the court revisited and denied the appellant's Rule 29 motion.  United States v. Hussein, 230 F. Supp. 2d 109, 110 (D. Me. 2002).  This timely appeal ensued.  In it, the appellant advances arguments identical to those raised in his Rule 29 motion:  (i) that the statute of conviction provided insufficient notice that his conduct was illegal (and, thus, his conviction offends due process), and (ii) that the evidence was insufficient to prove that he knowingly possessed a controlled substance.  We address each of these arguments, pausing first to erect the pertinent statutory framework.

## II.  THE STATUTORY FRAMEWORK

The CSA makes it illegal for any person knowingly to possess a controlled substance with intent to distribute.  21 U.S.C. § 841(a)(1).  For the purpose of this statutory scheme, a "controlled substance" is one listed in Schedules I through IV of

the CSA. See id. § 802(6) (defining "controlled substance"); see also id. § 812 (codifying the schedules). Neither cathinone nor cathine appear in any of the schedules. But DEA regulations — promulgated after passage of the CSA and published in the Code of Federal Regulations — have expressly classified cathinone as a Schedule I controlled substance, 21 C.F.R. § 1308.11(f)(2) (1993), and cathine as a Schedule IV controlled substance, id. § 1308.14(e) (1988). These accretions have the force of law. See 21 U.S.C. § 811(a) (authorizing the Attorney General to add substances to the CSA schedules); 28 C.F.R. § 0.100(b) (delegating that authority to the DEA). Thus, cathinone and cathine are controlled substances within the purview of the CSA.

Determining whether khat — as distinguished from its chemical building blocks — is a controlled substance requires us to navigate a different statutory course. Khat is not listed by name as a controlled substance in any of the schedules. The DEA regulations provide, however, that "any material, compound, mixture, or preparation which contains" cathinone is itself a Schedule I controlled substance and is subject to the same prohibitions as the chemical itself. 21 C.F.R. § 1308.11(f)(2); see also id. § 1308.14(e) (declaring that "any material, compound, mixture, or preparation" containing cathine is a Schedule IV controlled substance and treated similarly). When khat is first cut, it contains cathinone and is therefore a Schedule I controlled

substance.  If and when the cathinone mutates into cathine, khat migrates to Schedule IV.

The appellant does not dispute that khat is a controlled substance when it contains cathinone or cathine.  He reminds us, however, that the word "khat" appears in neither the schedules nor the amendments thereto.  The only published references to khat that are even arguably pertinent here are in the Federal Register.  On January 14, 1993, the DEA promulgated a final rule placing cathinone in Schedule I.  58 Fed. Reg. 4,316.  Appended to the rule — in a section entitled "Supplementary Information" — is a description of the link between khat and cathinone:

> Cathinone is the major psychoactive component of the plant Catha edulis (khat).  The young leaves of khat are chewed for a stimulant effect.  Enactment of this rule results in the placement of any material which contains cathinone into Schedule I.  When khat contains cathinone, khat is a Schedule I substance. . . .  When khat does not contain cathinone, but does contain cathine, khat is a Schedule IV substance.

Id. at 4,317.  A similar supplementary notice was published with the rule adding cathine to Schedule IV.  See 53 Fed. Reg. 17,459, 17,459.  The rules themselves were later published in the Code of Federal Regulations (CFR), but the supplementary information was never formally incorporated into the rules, and, thus, the references to khat do not appear in the CFR.

Against this backdrop, we turn to the appellant's due process and sufficiency claims.

## III.  THE DUE PROCESS CLAIM

Initially, the appellant complains that applying section 841(a)(1) to him violates the Due Process Clause because the CSA did not provide fair warning that his actions were illegal. Assessing this complaint requires an understanding of its constitutional underpinnings.

The criminal law should not be a series of traps for the unwary.  To that end, the Due Process Clause demands that criminal statutes describe each particular offense with sufficient definiteness to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." United States v. Harriss, 347 U.S. 612, 617 (1954).  A statute must give fair warning, "in language that the common world will understand, of what the law intends to do if a certain line is passed." McBoyle v. United States, 283 U.S. 25, 27 (1931).  "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." Harriss, 347 U.S. at 617.

The appellant seeks shelter within these doctrinal confines.  He concedes — as, indeed, he must — that a person of ordinary intelligence reading the CSA would know that the law criminalizes possession of cathinone, cathine, and materials containing either or both of those chemicals.  But the statute does not list khat explicitly, and the appellant suggests that a person

-8-

of ordinary intelligence would not be aware that khat contains cathinone and/or cathine (indeed, trial testimony indicated that even experienced DEA agents lacked such knowledge). He posits, therefore, that the CSA fails to provide fair warning that possessing khat is illegal.

We review constitutional challenges to federal statutes de novo. United States v. Bongiorno, 106 F.3d 1027, 1030 (1st Cir. 1997); United States v. Gifford, 17 F.3d 462, 471-72 (1st Cir. 1994). "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." Maynard v. Cartwright, 486 U.S. 356, 361 (1988).

We note, at the outset, that the appellant faces an uphill climb. Under section 841(a)(1)'s scienter requirement, the government must prove beyond a reasonable doubt that the accused "knowingly" possessed a controlled substance — and that fact, in and of itself, lessens fair warning concerns. See Vill. of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982) (explaining that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed"). In turn, the diminished likelihood of unfair enforcement raises the bar for the appellant's due process claim. United States v. Collins, 272 F.3d 984, 989 (7th Cir. 2001).

The slope is even steeper because the appellant's claim is out of the ordinary. Successful fair warning challenges typically involve conduct that falls into statutory crevices — conduct that a defendant can colorably claim eludes a statutory proscription. Such challenges generally fit one of three configurations. United States v. Lanier, 520 U.S. 259, 266 (1997). The most common is a void-for-vagueness attack. A criminal statute is susceptible to such an attack if it either prohibits or requires the performance of an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application. United States v. Nason, 269 F.3d 10, 22 (1st Cir. 2001). Vagueness of this sort raises the possibility that ordinary people will not understand what conduct is forbidden and the possibility of arbitrary or discriminatory enforcement. Kolender v. Lawson, 461 U.S. 352, 357 (1983).

The second configuration in which fair warning challenges routinely emerge is more a rule of construction than a ground for invalidation. Often referred to as the rule of lenity, it "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." Lanier, 520 U.S. at 266. "It is only when no reasonably clear meaning can be gleaned from the text of a statute, leaving courts to guess at what Congress intended, that the rule of lenity comes into play." United States v. Ahlers, 305 F.3d 54, 62 (1st Cir. 2002).

-10-

The last of the typical configurations is an echo of the Ex Post Facto Clause. It bars "unforeseeable and retroactive judicial expansion of narrow and precise statutory language." Bouie v. City of Columbia, 378 U.S. 347, 352 (1964). Under this rubric, a novel interpretation may be upheld — but not as applied to conduct taking place before its first iteration. Id. at 362.

These three configurations of the fair warning doctrine have a common denominator. In each of them, the sine qua non is statutory ambiguity. See, e.g., Bifulco v. United States, 447 U.S. 381, 387 (1980) (calling statutory ambiguity the "touchstone" of the rule of lenity); Bouie, 378 U.S. at 353 (discussing the relationship between statutory ambiguity and ex post facto concerns); United States v. Meade, 175 F.3d 215, 222 (1st Cir. 1999) (rejecting a fair warning/vagueness attack on a statute that contained "no ambiguity").

To the extent that statutory ambiguity is the linchpin of a fair warning challenge, this case does not fit the mold. The government prosecuted the appellant under an unambiguous regulation. See 21 C.F.R. § 1308.11(f)(2) (proscribing possession with intent to distribute "any material . . . containing . . . cathinone"). The language makes it perfectly clear that the charged conduct — possession of a material containing cathinone — is forbidden. Thus, there is no ambiguity such as might trigger a void for vagueness analysis, no warring interpretations calling for

an application of the rule of lenity, and no novel judicial gloss on statutory language sufficient to raise ex post facto concerns.

This analysis does not entirely foreclose the matter, for the appellant mounts a different kind of "fair warning" claim. He asseverates that, despite the CSA's unambiguous language, it fails to give adequate notice of the illegality of possessing khat as opposed to possessing "a material containing cathinone." Appellant's Br. at 10. This asseveration can only mean that the appellant could not have known, as a matter of law, that khat was a controlled substance (and, thus, proscribed).[1] In this vein, he argues that, even had he read the statute, its text would not have given him (or any other person of ordinary intelligence) actual notice that khat came within the statutory proscription.

Although the premise of this argument is valid — the CSA mentions only cathinone, not khat — the appellant's conclusion is unfounded. Due process does not require the statute specifically to prohibit either "khat" or "khat containing cathinone" as a precondition to conviction. And the fact that the architects of the law "might, without difficulty, have chosen 'clearer and more precise language' equally capable of achieving the end which [they]

---

[1]The alternative would be to read the asseveration as a claim that the appellant did not know, as a matter of fact, that khat was a controlled substance. At best, such a claim is a repackaged scienter defense, the merits of which we deal with in Part IV infra. At worst, it is a thinly veiled, and ultimately hopeless, ignorance of the law defense.

sought does not mean that the statute which [they] in fact drafted is unconstitutionally vague." United States v. Powell, 423 U.S. 87, 94 (1974) (quoting United States v. Petrillo, 332 U.S. 1, 7 (1947)).

A hypothetical may be the easiest way to illustrate the point. A defendant is discovered holding a sugar cube. The sugar cube is found to contain detectable amounts of LSD and the relevant statute proscribes knowing possession of a material containing LSD. The defendant, who professes not to have known of the adulteration, may very well mount a successful scienter defense; unless the government can show that he knew that the sugar cube contained a controlled substance, a jury will be unable to find that he had the requisite mens rea. Withal, the defendant cannot make a credible fair warning argument; reading the statute makes it perfectly clear that his conduct meets the actus reus requirement (possessing a material containing LSD). Of course, the warning could have been clearer — the statute could have proscribed possession of "sugar cubes containing LSD" — but due process simply does not require so high a degree of specification. See United States v. Arcadipane, 41 F.3d 1, 5 (1st Cir. 1994) (emphasizing that the fair warning doctrine neither "demand[s] an explicit or personalized warning" nor "excuse[s] professed ignorance of the law").

In an effort to dodge this bullet, the appellant points out that possession of khat is not a malum in se offense. Building

on this foundation, he declares that "the normal treatment of drug-containing plants in the CSA is to list both the active ingredients and the plant itself in the schedules if the plant is meant to be controlled." Appellant's Br. at 25-26 (citing examples, such as the listing of cocaine and coca leaves, opiates and poppy straw, mescaline and peyote cactus, THC and marijuana). In the appellant's view, this pattern leads a person of ordinary intelligence to believe that if the United States intended to criminalize the distribution of khat in addition to cathinone, it would have listed both.

We find this construct unpersuasive. The alleged pattern is, at best, irregular. For instance, Schedule I prohibits possession of psilocybin and psilocyn but not their plant hosts (magic mushrooms). It is simply too much of a stretch to assume, on the basis of this limited pattern, that a person of ordinary intelligence would jump to the conclusion that, despite the clear prohibition on "material containing cathinone," khat containing cathinone is excluded from coverage. This conclusion tracks the thinking of a clear majority of the state courts that have been confronted with similar problems. See, e.g., State v. Atley, 564 N.W.2d 817, 831 (Iowa 1997) (holding that a state controlled substances statute proscribing knowing possession of psilocybin provides constitutional fair warning that possession of psilocybe mushrooms is illegal); State v. Justice, 704 P.2d 1012, 1018 (Kan.

-14-

Ct. App. 1985) (same); People v. Dunlap, 442 N.E.2d 1379, 1385 (Ill. App. Ct. 1982) (same, re psilocyn). But see Fiske v. State, 366 So.2d 423, 424 (Fla. 1978). "The person of ordinary intelligence is also a person of common sense, with knowledge of common understanding[s] and practice which he brings fully to bear in examining the language of the statute." Sabetti v. Dipaolo, 16 F.3d 16, 17 (1st Cir. 1994) (citation and internal quotation marks omitted).

To say more on this issue would be supererogatory. For the reasons stated above, we reject the appellant's fair warning claim.[2]

## IV.  THE SUFFICIENCY CLAIM

We now reach the appellant's contention that the evidence was too scanty to warrant a guilty verdict. The statute of conviction, 21 U.S.C. § 841(a)(1), requires that the government prove beyond a reasonable doubt that the defendant knowingly possessed a controlled substance with intent to distribute it. The appellant does not question the sufficiency of the evidence that he

---

[2]Given this holding, we need not consider whether the "Supplementary Information" published in the Federal Register gave the appellant fair warning of the proscription against khat. See, e.g., United States v. Washam, 312 F.3d 926, 931 (8th Cir. 2002) (looking to language in Supplementary Information to find constitutionally sufficient notice); United States v. Fisher, 289 F.3d 1329, 1336-37 (11th Cir. 2002) (same); see generally United States v. Maxwell, 254 F.3d 21, 25 (1st Cir. 2001)(holding that a Federal Register publication gave sufficient notice to the public that unauthorized entry into a particular naval installation was prohibited).

possessed a controlled substance and intended to distribute it. He takes dead aim, however, at the evidence of knowledge.

Our review proceeds under familiar ground rules. An appellate court mulling a properly preserved sufficiency of the evidence challenge must "canvass the evidence (direct and circumstantial) in the light most agreeable to the prosecution and decide whether that evidence, including all plausible inferences extractable therefrom, enables a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime." Noah, 130 F.3d at 494. The proof need not exclude every reasonable hypothesis consistent with innocence. United States v. Jiminez-Perez, 869 F.2d 9, 11 (1st Cir. 1989). It is enough that a rational jury, looking objectively at all the evidence, could have found the defendant guilty beyond a reasonable doubt. Id. Credibility determinations are the province of the jury and must therefore be resolved in favor of its verdict. United States v. Franky-Ortiz, 230 F.3d 405, 407 (1st Cir. 2000).

Although the ground rules are familiar, applying them here takes us into terra incognita. Our starting point is the district court's charge. Without objection, the court instructed that, in order for the jury to find that the appellant knowingly possessed a substance containing a detectable amount of cathinone,

> the government must prove beyond a reasonable
> doubt that Abdigani Hussein [1] knew that the
> substance he possessed contained cathinone, or
> [2] knew that the substance he possessed

> contained a controlled substance. A
> controlled substance is a drug or other
> substance regulated under federal drug abuse
> law. (Emphasis supplied).

The existence of these parallel paths to proof of knowledge take this case out of the mine-run. In most drug cases, proving scienter is a straightforward exercise. Ignorance of the law is no defense, and so the government need not show that the defendant knew anything about the law; it need only show that the defendant knew the facts that brought his conduct within the law's prohibitions. See, e.g., United States v. Collazo-Aponte, 281 F.3d 320, 326 (1st Cir. 2002). Thus, in a prosecution for cocaine possession, it is ordinarily enough for the prosecution to prove that the defendant knew he possessed cocaine (without proving, additionally, that he knew cocaine to be a controlled substance). See, e.g., United States v. Cain, 130 F.3d 381, 384 (9th Cir. 1997); see also United States v. Barbosa, 271 F.3d 438, 457-58 (3d Cir. 2001) (noting that any other rule "would be tantamount to compelling the Government to disprove an ignorance of the law defense").

But khat, unlike cocaine, is not a controlled substance per se, and the government concedes that it is not enough to show that the appellant knowingly possessed khat. The general rule is that mens rea must be proven as to all elements of the offense. X-Citement Video, Inc. v. United States, 513 U.S. 64, 71 (1994). Following that rule, the government must show that the defendant

-17-

knew both that he possessed khat and that his khat contained cathinone. This jibes precisely with the first option contained in the district court's jury instruction.

On the facts, that option is a dead end. There is no evidence that the appellant had ever heard of cathinone, let alone that he was aware that khat contained it.

In this case, however, there is more than one way to skin a khat. The district court instructed the jury that another way that the government could prove scienter for purposes of section 841(a)(1) was to show that the appellant knew that "the substance he possessed contained a controlled substance." In that vein, the court defined "controlled substance" as any "drug or other substance regulated under federal drug abuse law."

This instruction was neither patently wrong nor internally inconsistent: the cases are legion that a defendant can lawfully be found guilty of having violated section 841(a)(1) even if he did not know the exact nature of the drug that he possessed as long as he knew that he possessed an illegal drug. See, e.g., Barbosa, 271 F.3d at 458; United States v. Sheppard, 219 F.3d 766, 769 (8th Cir. 2000); United States v. Leavitt, 878 F.2d 1329, 1337 (11th Cir. 1988); United States v. Cheung, 836 F.2d 729, 731 (1st Cir. 1988) (per curiam); United States v. Kairouz, 751 F.2d 467,

469 (1st Cir. 1985).[3] Because the case was given to the jury under an instruction that was neither patently incorrect nor internally inconsistent, and as to which no timely objection had been interposed, the instruction is binding (at least in the absence of plain error) See United States v. Gomes, 969 F.2d 1290, 1294 (1st Cir. 1992); Milone v. Moceri Family, Inc., 847 F.2d 35, 38-39 (1st Cir. 1988). Consequently, it was enough for the government to show that the appellant knew he had a controlled substance in his possession.

Although the parties agree that the verdict can stand if the evidence supports the second, more general, scienter standard — knowing possession of a controlled substance — they offer competing interpretations of what it means to "knowingly possess a

---

[3]The Court's ruling in Apprendi v. New Jersey, 530 U.S. 466 (2000), does not undermine this body of law. Before Apprendi, it was generally held that drug type and quantity were not elements of the offense, but, rather, sentencing factors relevant to determining the penalty. See United States v. Eirby, 262 F.3d 31, 36 (1st Cir. 2001); Sheppard, 219 F.3d at 767-68 (collecting cases). Since drug identity was not an element of the offense under section 841(a)(1), the mens rea requirement did not attach to the drug's identity. See, e.g., Barbosa, 271 F.3d at 48. Apprendi held that any fact that increases the penalty for a crime beyond the default statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. 530 U.S. at 490. Although the circuits are divided as to whether this rule in effect makes drug quantity and type elements of the offense for certain limited purposes, compare, e.g., Barbosa, 271 F.3d at 456-57 (suggesting an affirmative answer), with, e.g., United States v. Goodine, 326 F.3d 26, 32 (1st Cir. 2003) (suggesting a negative answer), the post-Apprendi cases are consentient that drug quantity and type are not elements of the offense for mens rea purposes. See United States v. Villarce, 323 F.3d 435, 439 (6th Cir. 2003) (collecting cases from six circuits); Collazo-Aponte, 281 F.3d at 326.

-19-

controlled substance" when a defendant lacks particularized knowledge of the identity of the drug possessed. The appellant acknowledges two accepted ways of fulfilling this alternative scienter requirement: mistaken drug identity (e.g., Kairouz, 751 F.2d at 467-68, in which we upheld a conviction for possessing heroin even though the defendant was under the misimpression that he was carrying cocaine), and willful blindness (e.g., United States v. Masse, 816 F.2d 805, 812 (1st Cir. 1987), in which we upheld a conviction for possessing cocaine when the evidence suggested deliberate ignorance on the defendant's part and, thus, justified an inference of knowledge). Those cases, the appellant argues, fall at the outermost periphery of the statute, and anything beyond them cannot satisfy the statute's scienter requirement. The government suggests a broader reading of the scienter requirement. In its view, a conviction can result if a defendant knows — in a general sense — that he has possession of a controlled substance, even though he has no idea of the precise identity of the particular drug.

We have not been able to find any federal case law specifically addressing the meaning of "knowingly" in this context, and the parties have cited none. Taking the matter as one of first impression, we conclude that the government's broader reading of the scienter requirement better comports with the structure of the CSA and Congress's discernible aims. We explain briefly.

In our judgment, construing the scienter requirement as narrowly as the appellant suggests would be in tension with the legislative intent behind the CSA. We glean this intent, in part, from the structure of section 841. Subsection (a) identifies a crime that stands on its own: knowing possession of a controlled substance with intent to distribute. Subsection (b) then lays out a series of progressive penalties, the severity of which depend, among other things, upon drug type. From this binary structure, courts reasonably have inferred that Congress intended the scienter requirement in section 841(a) to apply to the blanket category "controlled substances" and not to the identity of the specific drug involved in the offense. See Barbosa, 271 F.3d at 458-59; United States v. Promise, 255 F.3d 150, 156 (4th Cir. 2001); United States v. Davis, 656 F.2d 153, 158-59 (5th Cir. Unit B 1981). Identity comes to the fore only when applying the penalty provisions of section 841(b).

The policy justification that drives this structure also militates against the appellant's cramped construction. In drafting the CSA, Congress's principal interest was "to deal in a comprehensive fashion with the growing menace of drug abuse in the United States." H.R. Rep. No. 91-1444, at 1 (1970), reprinted in 1970 U.S.C.C.A.N. 4566, 4567. The law's penalty provisions were aimed at achieving deterrence, and Congress made pellucid its belief "that making the penalty structure in the law more flexible

can actually serve to have a [greater] deterrent effect." Id. Congress wanted to eliminate some of the obstacles to prosecution that existing law presented. See id. And, finally, it wanted judges to have maximum flexibility in sentencing, Davis, 656 F.2d at 159, and violators to "run the risk of sentencing enhancements concerning other circumstances surrounding the crime," United States v. Obi, 947 F.2d 1031, 1032 (2d Cir. 1991). We think it inconsistent with these goals to restrict the ways in which the government can prove scienter as narrowly as the appellant suggests.

To sum up, the scienter requirement of section 841(a)(1) necessitates proof beyond a reasonable doubt that the defendant knowingly possessed a controlled substance. In most cases, this will be accomplished by proving that the defendant knew the specific identity of the controlled substance that he possessed. In appropriate circumstances, however, knowledge may be shown in other ways, including proof that the defendant knew he possessed a controlled substance (even though he was either mistaken about or did not know its exact identity). The language that the district court used in its jury instructions faithfully tracked this last concept: that the government could carry its burden of proving scienter by showing, beyond a reasonable doubt, that the appellant knew that he possessed a substance regulated under federal drug abuse laws. If the defense had any doubt about the jury's

comprehension of the term "controlled substance," it could have asked for a more pointed instruction as to that term's meaning in the context at hand. No such gloss having been requested, neither its advisability nor its necessity is now before us.

This brings us to the adequacy of the government's proof of knowledge. In denying the Rule 29 motion, the district court determined that the evidence sufficed to permit a finding that the appellant "knew that he was trafficking in a controlled substance." Hussein, 230 F. Supp. 2d at 112. The court laid out an eight-part compendium of suspicious circumstances contributing to this determination:

> Hussein knew that [1] he and many others were picking up packages of khat . . . for Gani Mohamed . . . [2] Mohamed used the names and addresses of individuals all over Lewiston and Portland for shipment . . . [3] Mohamed had given him only a tracking number for the packages he was to pick up . . . [4] Mohamed asked him to pick up the parcel even though . . . Mohamed was going to be in Portland himself . . . [5] Mohamed paid him in khat . . . [6] Mohamed sold the khat for $6-8 a bundle . . . [7] neither . . . Mohamed's name nor Hussein's name was listed as addressee on [the parcel] . . . [8] the label falsely listed the contents as documents.

Id. Based on this and other evidence, the court concluded that the jury was entitled to "find beyond a reasonable doubt that [the appellant] knew that he had a controlled substance and was evading drug-regulating authorities." Id. at 113.

-23-

This analysis makes sense. Like knowledge in other contexts, a showing of scienter under section 841(a)(1) can (and often will) be made through circumstantial evidence. A factfinder must take into account the totality of the attendant circumstances, including but not limited to the defendant's sophistication, his knowledge of the substance possessed, his awareness of its intended use, his familiarity with its effects on the central nervous system, the efforts employed to avoid detection, and the method and amount of the remuneration that he will receive for his role. These and other factors may be sufficient to show, in a given case, that a defendant knowingly possessed a controlled substance even if the evidence also shows that the defendant could not identify the possessed substance by the name appearing on the schedules incorporated into the CSA. Cf. United States v. Jewell 532 F.2d 697, 700 (9th Cir. 1976) (explaining, in a willful blindness case, that "[t]o act 'knowingly' . . . is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question").

Although the question is very close, we conclude that the jury could have found beyond a reasonable doubt that the appellant knowingly possessed a controlled substance. We will not rehearse the lower court's meticulous marshaling of the relevant evidence. See Hussein, 280 F. Supp. 2d at 112. We note only that the jurors were entitled to pay particular heed to four key facts. First, the

-24-

appellant was a knowledgeable individual; he was not a recent immigrant, but a successful businessman who had been in the United States for a number of years.  Second, he knew that what he possessed was khat and that khat was used as a stimulant.  Third, this was not his first trip for Mohamed.  Last — but far from least — he knew that the arrangements for shipping and retrieving the packages were elaborately contrived to avoid detection.  Indeed, the secrecy, the mislabeling, the use of cut-outs and phony addresses, and the recruitment of multiple couriers painted a picture that was strongly suggestive of illegal drug trafficking.  While these facts, along with the remaining evidence, do not mandate a finding of scienter, they are in our judgment sufficient to permit it.

Without explicitly stating the test and factors for proving scienter, we upheld a jury finding of knowing drug possession on somewhat similar facts in Cheung.  There, an undercover agent arranged by telephone with a third party to purchase a quantity of heroin for $4,100.  836 F.2d at 730.  Cheung brought a wrapped package to the agreed rendezvous.  Although the heroin was not visible, the evidence suggested that he could feel a granular substance through the wrapping.  Id.  When the agent asked, "I have the money; do you have the shit?" Cheung answered in the affirmative.  He then passed a bag containing the wrapped package underneath the table to the agent and collected $4,100 in

$100 bills. <u>Id.</u> at 731. We held this evidence sufficient to show that Cheung knowingly possessed a controlled substance even if he did not know the precise contents of the package. <u>Id.</u> at 730-31. Other precedents also suggest the same result. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Ocampo-Guarin</u>, 968 F.2d 1406, 1410 (1st Cir. 1992); <u>Leavitt</u>, 878 F.2d at 1337.

The appellant (who did not testify) makes a last-ditch claim: he strives to persuade us that he might have thought that the inaccurate label and other unusual aspects of the shipment and delivery were designed to evade either Department of Agriculture regulations banning the importation of vegetable matter without inspection or customs controls such as import duties. We find this claim unconvincing for two reasons.

In the first place, there is no evidence suggesting that the appellant (or Mohamed, for that matter) had any knowledge of possible agricultural, customs, or tariff violations. In the second place, the possibility that this claim raises is, at most, a jury argument — and a criminal jury is neither required to rule out every possible hypothesis inconsistent with guilt nor to accept a defendant's interpretation of ambiguous facts. <u>See</u> <u>Jiminez-Perez</u>, 869 F.2d at 11.

## V.  CONCLUSION

We need go no further. While the statutory provisions at issue here could have been more clear, regulating khat by name in

addition to regulating its active chemical ingredient, they sufficed to give the appellant fair warning that his conduct was illegal. Moreover, the evidence, viewed in the light most favorable to the verdict, shows that the appellant did not heed this warning. Hence, the district court acted appropriately in denying the appellant's Rule 29 motion.

**Affirmed**.