MAINE SUPREME JUDICIAL COURT                                Reporter of Decisions
Decision:      2015 ME 8
Docket:        Yor-14-116
Argued:        December 10, 2014
Decided:       January 29, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

JEANETTE DAGGETT

v.

DUSTIN A. STERNICK

SAUFLEY, C.J.

[¶1]   Dustin A. Sternick appeals from a judgment of the District Court (Biddeford, *Cantara, J.*) awarding primary residence of the parties' minor child to Jeanette Daggett, who intends to move to Florida with the child.  Sternick argues (1) that the court infringed on the protections afforded to him pursuant to the Maine Medical Use of Marijuana Act, 22 M.R.S. § 2423-E(3) (2014), by reaching findings related to his marijuana use and (2) that the court abused its discretion in awarding primary residence to Daggett based on Sternick's lawful marijuana use. We affirm the judgment.

I.  BACKGROUND

[¶2]  The court found the following facts, which are supported by competent evidence in the record.  *Sloan v. Christianson*, 2012 ME 72, ¶ 2, 43 A.3d 978.

Jeanette Daggett and Dustin Sternick are the biological parents of a daughter, who was born on March 1, 2010.

[¶3] Daggett has demonstrated an ability to care for and protect the child over the course of the child's life. She has a Master of Arts in Clinical and Counseling Psychology and has a pending job offer in her specialty in Florida, where she would earn $42,370 per year. Daggett's mother lives in Florida and would provide Daggett and the child with housing, financial, and emotional support there.

[¶4] Sternick currently earns approximately $6,000 per year working part time at a pizza parlor. On the weekends, instead of earning money to support his child, Sternick volunteers his time at a friend's marijuana farm and receives no compensation for his work. Although Sternick believes that he could make $50,000 per year working at his friend's marijuana farm full-time, he is more realistically capable of making $22,800 per year.

[¶5] Sternick uses large amounts of medical marijuana to treat a medical condition and has a great deal of marijuana, in many forms, all over the home. Friends and relatives of Sternick often drop by the house to obtain or ingest marijuana, and the child has been exposed to marijuana. Sternick's ability to care for a young child while under the influence of marijuana is questionable and problematic. The court found that Sternick appeared slow in his thinking at trial,

likely due to his regular ingestion of marijuana, and that his eyes were pink and bloodshot. The court further found that, although well intentioned, Sternick has not mastered the full range of skills necessary to care for a young child and has not paid serious attention to the child's health needs.

[¶6] Given the economic opportunities available to Daggett in Florida, and the support that Daggett and the child would receive from Daggett's family there, the court ultimately found it in the child's best interest that primary residence be granted to Daggett. Further, the court found that Daggett had credibly testified that she would promote a healthy relationship between the child and Sternick.

[¶7] After the court entered its judgment, Sternick did not move pursuant to M.R. Civ. P. 52 for additional findings of fact or conclusions of law, "and it is well-settled that in the absence of such a motion, we assume that there was competent evidence in the record, which the court considered, to support the . . . judgment." *Grant v. Hamm*, 2012 ME 79, ¶ 14, 48 A.3d 789 (quotation marks omitted).

[¶8] Sternick timely appealed the District Court's determination of primary residence pursuant to 19-A M.R.S. § 104 (2014) and M.R. App. P. 2(b)(3).

4

## II.  DISCUSSION

[¶9]  This appeal centers on our interpretation of the Maine Medical Use of Marijuana Act (MMUMA).  Section 2423-E of MMUMA provides that

> [a] person may not be denied parental rights and responsibilities with respect to or contact with a minor child as a result of acting in accordance with this chapter, unless the person's conduct is contrary to the best interests of the minor child as set out in Title 19-A, section 1653, subsection 3.

22 M.R.S. § 2423-E(3) (2014).[1]

[¶10]  Sternick contends that the court erred by not considering the statutory protections afforded to him pursuant to MMUMA when it determined primary residence.  He asserts that the "mere use of medical marijuana should not be considered by the trial court when deciding child custody matters."  Thus, he argues (1) that the court infringed on the protections afforded to him pursuant to MMUMA by reaching findings related to his marijuana use and (2) that the court abused its discretion in awarding primary residence to Daggett based solely on Sternick's lawful marijuana use.  Daggett responds that the court's allocation of primary residence to her was not based on Sternick's legal use of marijuana but instead on his abuse of marijuana, exposure of the child to substance abuse, and neglect of the child's financial and medical needs.

---

[1]  Title 19-A, section 1653, subsection 3 is the multi-factor statutory provision setting forth "the standard of the best interest of the child[,]" which the court is required to apply "in making an award of parental rights and responsibilities with respect to a child."

[¶11] When interpreting a statute de novo, we first examine the plain meaning of the statutory language. *Hatch v. Anderson*, 2010 ME 94, ¶ 11, 4 A.3d 904. "The fundamental rule in the interpretation of any statute is that the intent of the legislature, as divined from the statutory language itself, controls." *State v. Butt*, 656 A.2d 1225, 1227 (Me. 1995). It is well settled that when "addressing rights of parent-child contact, the best interest of the child is the paramount consideration." *Sullivan v. Doe*, 2014 ME 109, ¶ 19, 100 A.3d 171; *see* 19-A M.R.S. §§ 1653(1)(C), (2)(D)(1), (3) (2014); *Grant*, 2012 ME 79, ¶ 6, 48 A.3d 789. When reviewing a determination of parental rights and responsibilities, "[w]e review the court's factual findings for clear error and its ultimate conclusion regarding the child's best interest for an abuse of discretion." *Grant*, 2012 ME 79, ¶ 6, 48 A.3d 789 (citation omitted).

[¶12] Section 2423-E(3) provides that a court may not use a parent's lawful use of medical marijuana as the reason to deny parental rights and responsibilities, *unless* that parent's conduct—legal or otherwise—is contrary to the best interest of the child. Sternick appears to argue that section 2423-E(3) evidences a legislative determination that a parent's legal use of marijuana cannot be considered in determining a parent's rights.

[¶13] Such a stark pronouncement presents neither an accurate reading of the statute, nor what the Legislature intended when it enacted section 2423-E(3).

6

Instead, the Legislature explicitly provided that a court may consider a parent's marijuana use to the extent that it affects the best interest of the child. Section 2423-E(3) merely reflects the Legislature's determination that a parent's legal medical marijuana use, standing alone, is not a permissible justification to limit a parent's rights. The primary consideration for a court, explicitly recognized by the Legislature in both Title 19-A and MMUMA, is the best interest of the child. *See* 19-A M.R.S. § 1653(3); 22 M.R.S. § 2423-E(3).

[¶14] Determining what is in the best interest of the child necessarily involves considering whether a parent's ability to care for his or her child is impaired, including by his or her marijuana use. As with any medication or substance, the question of whether a parent's ingestion of marijuana is legal is only part of the equation. The more important question is whether that ingestion negatively affects, limits, or impairs a parent's capacity to parent his or her child. Regardless of the cause, if a parent's capacity to meet the needs of his or her child is compromised, a court must consider that in assessing the best interest of the child. An impaired parent may be unable to act in the best interest of the child. This may be true regarding any medication or legal substance that a parent ingests, whether or not the Legislature has specifically addressed the particular medication or substance through a statute.

[¶15]   Here, the record is replete with evidence that Sternick has been distracted from his role as a parent and provider to his child by his focus on obtaining and ingesting marijuana, and that his capacity to parent is impaired by his marijuana use.   Photographs admitted in evidence depicted voluminous amounts of marijuana-infused baked goods in the freezer and a jar full of marijuana in the kitchen cabinet—both places that were potentially accessible to the child.   The court heard testimony that Sternick failed to seek medical attention for the child's ear infections, even after repeated requests from Daggett, for eighteen days.   When Daggett finally took the child to an urgent care clinic, the child was diagnosed with a double ear infection and a ruptured eardrum.   Daggett testified that the child "reeks of marijuana butter" when she returns from staying with Sternick and that Daggett has to wash everything to remove the smell from the child's clothes and hair.   Furthermore, Daggett planted voice recorders around the house to monitor activities there while she was at work because she was concerned about Sternick's level of supervision of the child during the day.   When replaying the recordings, Daggett mostly heard the child playing alone in her room while Sternick remained downstairs or in the basement.   On one occasion, the child was forced to urinate in her bedroom because she was locked in and could not get out to go to the bathroom.   The record evidence overwhelmingly establishes that

Sternick is preoccupied with marijuana and gives priority to marijuana over the health and well being of his child.

### III. CONCLUSION

[¶16]  The court did not award primary residence to Daggett solely based on Sternick's lawful use of medical marijuana and thus did not run afoul of the statutory protections identified in MMUMA.  The court's factual findings did not rely on Sternick's legal use of marijuana but rather focused on his distraction and impairment while parenting and the consequential neglect of his child's needs. Therefore, the court did not abuse its discretion in granting primary residence to Daggett and allowing her to relocate to Florida where the child will also have the substantial benefit of extended family support.

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

Anedra C. Gregori, Esq., Zerillo Law, LLC, Portland, for appellant Dustin Sternick

Suzanne E. Thompson, Esq., Vincent, Kantz, Pittman & Thompson, LLC, Portland, for appellee Jeanette Daggett