MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2015 ME 31
Docket:       Kno-14-196
Argued:       February 12, 2015
Decided:      March 17, 2015

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## DAVID RECKARDS

MEAD, J.

[¶1]   David Reckards appeals from an order of the Superior Court (Knox County, *Hjelm, J.*) denying his motions to dismiss two criminal cases against him on the ground that the statute defining a "synthetic hallucinogenic drug," 17-A M.R.S. § 1101(16-A)(O) (2012), is unconstitutionally vague. We affirm the judgment.

## I.  BACKGROUND

[¶2]   On July 10, 2013, a grand jury indicted Reckards on several charges including unlawful trafficking in synthetic hallucinogenic drugs (Class B), 17-A M.R.S. § 1120(1) (2012), and conspiracy to commit unlawful trafficking in synthetic hallucinogenic drugs (Class C), 17-A M.R.S § 151(1)(C) (2012).[1] Reckards initially entered not guilty pleas to all charges on July 30, 2013, and on

---

[1]   The drugs at issue in this case are commonly known as "alpha-PVP" or "bath salts."

July 31, 2013, he filed motions to dismiss the two cases on the ground that the statute defining a "synthetic hallucinogenic drug" is unconstitutionally vague. The court denied the motions, and Reckards entered conditional guilty pleas pursuant to M.R. Crim. P. 11(a)(2). Reckards was sentenced on April 29, 2014, subject to the outcome of this appeal, to serve a four-year sentence, with all but nine months and one day suspended, with two years' probation. He was also fined $505 and ordered to pay $240 in restitution.

## II. DISCUSSION

[¶3] Reckards argues that the court erred in denying his motions to dismiss because (1) the term "derivative" used in 17-A M.R.S. § 1101(16-A)(O) is ambiguous and therefore subject to multiple interpretations, and (2) the statute as a whole is too complex for an ordinary person to understand, thus rendering it unconstitutionally vague. We examine his claims in turn.

A. Standard of Review and Maine Law

[¶4] We review the validity of a statute de novo. *State v. Haskell,* 2001 ME 154, ¶ 3, 784 A.2d 4. "[A] statute is presumed to be constitutional and the person challenging the constitutionality has the burden of establishing its infirmity." *Id.* (quotation marks omitted). In a void-for-vagueness challenge, we do not analyze the statute to ascertain if it is valid on its face, but instead assess the challenge "by testing it in the circumstances of the individual case and considering

whether the statutory language was sufficiently clear to give the defendant adequate notice that his conduct was proscribed." *State v. Aboda,* 2010 ME 125, ¶ 15, 8 A.3d 719 (quotation marks omitted).

[¶5] The due process clauses of the United States and Maine Constitutions "require that a statute must provide reasonable and intelligible standards to guide the future conduct of individuals and to allow the courts and enforcement officials to effectuate the legislative intent in applying these laws." *State v. Peck,* 2014 ME 74, ¶ 10, 93 A.3d 256 (quotation marks omitted). Additionally, "[a] statute should define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *State v. Preston,* 2011 ME 98, ¶ 8, 26 A.3d 850 (quotation marks omitted). However, "[n]ot every ambiguity, uncertainty or imprecision of language in a statutory pattern rises to the level of being unconstitutionally void for vagueness." *Id.* Legislation will not be void for vagueness if any reasonable construction will support it. *State v. Witham,* 2005 ME 79, ¶ 7, 876 A.2d 40.

B.    The Meaning of "Derivative"

[¶6] Reckards was convicted pursuant to 17-A M.R.S. § 1120(1), which provides: "A person is guilty of unlawful trafficking in a synthetic hallucinogenic drug if the person intentionally or knowingly traffics in *what the person knows or*

*believes to be a synthetic hallucinogenic drug,* which is in fact a synthetic hallucinogenic drug." (Emphasis added.) Title 17-A M.R.S. § 1101 (16-A)(O) provides that a substance meeting the following criteria is a "synthetic hallucinogenic drug":

> A *derivative* of cathinone, including any compound, material, mixture, preparation or other product, structurally derived from 2-aminopropan-1-one by substitution at the 1-position with either phenyl, naphthyl or thiophene ring systems, whether or not the compound is further modified in any of the following ways:
>
> (1) By substitution in the ring system to any extent with alkyl, alkylenedioxy, alkoxy, haloalkyl, hydroxyl or halide substituents, whether or not further substituted in the ring system by one or more other univalent substituents;
>
> (2) By substitution at the 3-position with an acyclic alkyl substituent; or
>
> (3) By substitution at the 2-amino nitrogen atom with alkyl, dialkyl, benzyl or methoxybenzyl groups or by inclusion of the 2-amino nitrogen atom in a cyclic structure.

(Emphasis added.)[2]

[¶7] Reckards argues that the term "derivative" is based purely in chemistry and has two possible definitions, and because different chemists could reach different conclusions, the statute is unconstitutional. At the hearing on the motions

---

[2] This statute has been repealed, reenacted, and relocated. Originally, the charging statute was found at 17-A M.R.S. § 1120(1), and the language above was part of the definition of a "synthetic hallucinogenic drug" found at 17-A M.R.S. § 1101(16-A)(O) (2012). Currently, the charging statute is found at 17-A M.R.S. § 1103(1-A)(A) (2014), and the language above is listed under the definition of "schedule W" drug at 17-A M.R.S. § 1102(1)(P)(15) (2014).

to dismiss, the State offered the testimony of Maria Pease, a chemist employed by the State of Maine, who explained that a substance can be derived either synthetically, meaning that it is possible to physically create the substance in a lab from an antecedent, or it can be derived theoretically, meaning that the substance can be derived on paper in the abstract.[3] Pease also testified that she and several other chemists had discussed the meaning of the word "derivative," and had ultimately agreed that the term encompassed both of the chemistry-related definitions that Pease described. The word "derivative" also has a common usage that can be looked up in a dictionary and is consistent with the interpretation agreed upon by the chemists referenced at the hearing.[4] For these reasons, the term "derivative" is not unconstitutionally vague.

C.    Scienter

[¶8] Several of the federal circuit courts have addressed void-for-vagueness challenges to federal statutes enacted as part of the Controlled Substances Act (CSA). Those courts have unanimously upheld drug statutes when they have contained adequate scienter requirements. Additionally, the United States

---

[3] Reckards does not argue for one interpretation of "derivative" over the other. This potential ambiguity may be better addressed as a question of statutory interpretation rather than a challenge for unconstitutional vagueness.

[4] The term "derivative" is defined as "[c]opied or adapted from others." *Webster's II New College Dictionary* 305 (2001). *Webster's* also provides a chemistry-related definition: "A compound derived or obtained from known or hypothetical substances and containing essential elements of the parent substance." *Id.*

Supreme Court has recognized that a scienter requirement may mitigate a law's vagueness. *Screws v. United States,* 325 U.S. 91, 104-05 (1945).

[¶9]  In 2003, the First Circuit addressed a federal drug statute in a void-for-vagueness challenge involving a substance known as "khat," which is a leafy green plant that contains a chemical stimulant known as cathinone when it is first cut. *United States v. Hussein,* 351 F.3d 9, 11 (1st Cir. 2003). The CSA provides that "it shall be unlawful for any person *knowingly or intentionally . . .* to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C.A. § 841(a) (2014) (emphasis added). "[A]ny material, compound, mixture, or preparation which contains . . . cathinone" is a schedule I controlled substance under federal Drug Enforcement Agency regulations. 21 C.F.R. § 1308.11(f)(3) (2014). Khat, like alpha-PVP, is not specifically listed as a controlled substance in the schedules. *Hussein,* 351 F.3d at 13.

[¶10]  In *Hussein,* a jury found Hussein guilty of "knowingly possessing and intending to distribute khat" in violation of the CSA. *Id.* at 11. Hussein argued that the CSA "did not afford him fair warning that possession of khat was illegal" and that a person of ordinary intelligence would not know that khat contains cathinone. *Id.* at 11, 14. In its decision, the First Circuit noted that "[t]he criminal law should not be a series of traps for the unwary. To that end, the Due Process

Clause demands that criminal statutes describe each particular offense with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *Id.* at 13 (quotation marks omitted).

[¶11] After determining that the statute and regulation were unambiguous, the court determined that due process did not require the statute to specifically name "khat" in order to avoid unconstitutional vagueness. *Id.* at 15-16. The First Circuit determined that what really mattered, and what made the statute and regulation constitutional, was a broad reading of the scienter requirement in the statute containing the offense:

> To sum up, the scienter requirement of section 841(a)(1) necessitates proof beyond a reasonable doubt that the defendant knowingly possessed a controlled substance. In most cases, this will be accomplished by proving that the defendant knew the specific identity of the controlled substance that he possessed. In appropriate circumstances, however, knowledge may be shown in other ways, including proof that the defendant knew he possessed a controlled substance (even though he was either mistaken about or did not know its exact identity).

*Id.* at 19. The Second, Sixth, and Eighth Circuits have also all upheld the khat-related regulatory scheme in the CSA because of the statute's adequate scienter requirement. *See United States v. Hassan,* 578 F.3d 108, 120 (2d Cir. 2008); *United States v. Caseer,* 399 F.3d 828, 838-39 (6th Cir. 2005); *United States v. Sheikh,* 367 F.3d 756, 764 (8th Cir. 2004). In *Hassan*, the Second Circuit determined that "what saves the statute at issue here—the CSA as it relates

8

to khat—from constitutional trouble is the fact that scienter is required for a conviction."[5] *Hassan*, 578 F.3d at 120.

[¶12] We agree with the logic and analysis of the federal circuit courts regarding the scienter requirement in a void-for-vagueness challenge. Title 17-A M.R.S. § 1101(16-A)(O) withstands constitutional scrutiny because of the scienter requirement contained in the charging statute, 17-A M.R.S. § 1120(1). Reckards argues that the statute as a whole is so complex that ordinary people cannot understand it, and that it is not clear to an ordinary person whether alpha-PVP is illegal because the statute makes no reference to the drug.[6] While the statute is complex, the federal circuits have rejected such arguments when the statute has an adequate scienter requirement. In this case, the State is still required to prove a culpable state of mind beyond a reasonable doubt, and for that reason, we hold that 17-A M.R.S. § 1101(16-A)(O) is constitutional.

---

[5] There is a comparable line of drug cases involving challenges to the Analogue Act on void-for-vagueness grounds in which the federal courts hold the statutes to be constitutional because they contained an adequate scienter requirement. *See United States v. Turcotte,* 405 F.3d 515 (7th Cir. 2005); *United States v. Klecker,* 348 F.3d 69 (4th Cir. 2003); *United States v. Orchard,* 332 F.3d 1133 (8th Cir. 2003); *United States v. Hofstatter,* 8 F.3d 316 (6th Cir. 1993); *United States v. Granberry*, 916 F.2d 1008 (5th Cir. 1990); *but see United States v. Forbes,* 806 F. Supp. 232, 237-38 (D. Colo. 1992) (holding that the definition of "controlled substance analogue" is unconstitutional as applied to a drug known as "AET" because the scientific community could not agree on a methodology to determine structural similarity and the definition did not require any scienter).

[6] Reckards suggests that statutes that prohibit possession of particular substances should include "street names" or nonscientific popular references; such a practice would actually tend to create uncertainty and vagueness rather than reduce it.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jeremy Pratt, Esq., and Ellen Simmons, Esq., Camden, for appellant David Reckards

Janet T. Mills, Attorney General, Katie Sibley, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral arguments:**

Jeremy Pratt, Esq., for appellant David Reckards

Katie Sibley, Asst. Atty. Gen., for appellee State of Maine