MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2015 ME 96
Docket:      Sag-14-408
Argued:      May 13, 2015
Decided:     July 28, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

## STATE OF MAINE

v.

## JOSEPH M. SOLOMON II

MEAD, J.

[¶1]  Joseph M. Solomon II appeals from a judgment of conviction entered by the trial court (*Billings, J.*) on a jury verdict finding him guilty of tampering with a juror (Class C), 17-A M.R.S. § 454(1-A)(A) (2014), and on the court's verdict of guilty of violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2014).  The court imposed a sentence of two years in prison, with all but nine months suspended and two years of probation.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  On March 8, 2013, Solomon was present in Superior Court for jury selection for his upcoming trial on a charge of violating a protective order.  At some point during the jury selection process, the judge and attorneys conferred at side bar.  Solomon remained alone at the defense table.  Unbeknownst to the attorneys and judge, Solomon wrote, "Please don't let them railroad your

Veterans" on a piece of paper and held it up in view of the twenty-five to thirty potential jurors. He then crumpled up the piece of paper and discarded it. Later that afternoon, one of the potential jurors told a judicial marshal that she had seen Solomon hold up the sign. The judicial marshal and a state trooper then interviewed four of the potential jurors who had seen Solomon hold up the piece of paper. Solomon was arrested the next day for tampering with a juror.

[¶3] On April 9, 2013, the State filed a supplemental indictment charging Solomon with four counts of tampering with a juror (Class C) pursuant to 17-A M.R.S. § 454(1-A)(A) and one count of violating a condition of release pursuant to 15 M.R.S. § 1092(1)(A). In response, Solomon filed a motion to dismiss the indictment on the ground that the term "juror" in 17-A M.R.S. § 454(1-A)(A) does not include members of the jury pool who have been called for possible jury service, but have not yet been selected to sit on the jury. Solomon also filed a motion in limine to exclude any testimony from jury pool members who had seen him hold up the sign "as to the effect it had on them."

[¶4] On the day of Solomon's jury tampering trial, the court denied his motion to dismiss and determined that the jury tampering statute does include members of the jury pool. The court also ruled that witnesses would be allowed to offer lay opinions "based on the circumstances that they saw, [and what] they concluded [] Mr. Solomon was trying to do . . . ."

[¶5]  At trial, the State's evidence included a ten-second video of Solomon showing the sign to the jury pool.  Solomon did not dispute that he held up the sign or what it stated, and the parties stipulated that when Solomon "displayed the sign, the lawyers were conferring with the [j]udge to finalize the jury selection that resulted in the [twelve] jurors and two alternates who were ultimately selected to sit on the criminal case."  One potential juror who had seen Solomon hold up the sign testified that he thought Solomon "was trying to . . . influence us."  Another testified that he believed that Solomon "was trying to persuade the jury selection members" by holding up the sign.

[¶6]  At the end of Solomon's trial, before the court instructed the jury, Solomon objected to the court's proposed definition of "juror," which the court had defined as "a person called for jury duty including jury selection."  Solomon argued that the definition of "juror" was a factual determination for the jury to decide, and that the court should not define terms that are not defined in the Maine Criminal Code.  The court overruled Solomon's objection and concluded that the term "juror" was

> ultimately a legal term and it's a legal term that needs a definition.  And that is a question of law.  And as we made . . . clear to jurors . . . it is the [c]ourt's role to tell the jury what the law is and the jury's role to decide questions of fact.  And once provided the definition of what a juror is, obviously, it is the jury's role to decide whether in this particular case the people named in the indictment were in fact jurors.

The jury found Solomon guilty of all four tampering counts, and, on Solomon's election to proceed with a bench trial on the charge of violating a condition of release, the court found him guilty of that remaining count. Solomon appeals the resulting convictions.

## II. DISCUSSION

[¶7] Solomon argues that the court erred by (1) denying his motion to dismiss the indictment, (2) giving the jury an inappropriate definition of "juror," and (3) allowing lay witnesses to testify as to what they thought he was attempting to accomplish with the piece of paper.[1] We examine his claims in turn.

## A. "Juror" Defined for Purposes of the Jury Tampering Statute

[¶8] Solomon's first two arguments are based on the same contention, namely that the plain meaning of "juror" does not include potential jurors or members of the jury pool.[2] In response, the State argues that Solomon's proposed

---

[1] Solomon also contends that the court's ruling violated his state and federal due process rights due to the ambiguity of the term "juror," effectively making a void-for-vagueness argument. "However, [n]ot every ambiguity, uncertainty or imprecision of language in a statutory pattern rises to the level of being unconstitutionally void for vagueness" and "[l]egislation will not be void for vagueness if any reasonable construction will support it." *State v. Reckards*, 2015 ME 31, ¶ 5, 113 A.3d 589 (first alteration in original) (citation omitted) (quotation marks omitted). The meaning of the word "juror" is an issue of statutory interpretation. The statutory language is sufficient to put a person on notice that efforts to influence members of a jury, or jury pool, are against the law.

[2] Solomon also argues that the definition of "juror" is an issue of fact that should have been decided by the jury instead of by the court. In this case, defining "juror" requires an exercise of statutory interpretation. *See Sunshine v. Brett*, 2014 ME 146, ¶ 15, 106 A.3d 1123 (defining "benefited parcel"). "We reiterate that questions of statutory interpretation are legal issues. Statutory interpretation is a task for the courts, not for juries." *Id.* ¶ 15 n.9 (citation omitted).

definition of "juror" would lead to absurd results, and that the broader definition applied by the court was correct.

[¶9]  "The sufficiency of a charging instrument is a jurisdictional issue. . . . We construe the statute defining an offense de novo to determine what elements constitute the crime."  *State v. Elliott*, 2010 ME 3, ¶ 29, 987 A.2d 513.  "When interpreting a statute de novo, we first examine the plain meaning of the statutory language.  The fundamental rule in the interpretation of any statute is that the intent of the legislature, as divined from the statutory language itself, controls."  *Daggett v. Sternick*, 2015 ME 8, ¶ 11, 109 A.3d 1137 (citation omitted) (quotation marks omitted).  Additionally, "[w]e seek to discern from the plain language of the statute the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical."  *State v. Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893 (quotation marks omitted).

[¶10]  Title 17-A M.R.S. § 454(1-A)(A) provides in relevant part:

A person is guilty of tampering with a juror if the actor . . . [c]ontacts by any means a person who is a juror or any other person that the actor believes is in a position to influence a juror and the actor does so with the intention of influencing the juror in the performance of the juror's duty.

6

"Juror" is not defined anywhere in the Maine Criminal Code. It is, however, defined for civil cases.[3] For civil jury trials, 14 M.R.S. § 1203-A(3) (2014) defines "juror" as follows:

> "Juror," for the purposes of this chapter, means any person who attends court for the purpose of serving on a jury, is on call and available to report to court to serve on a jury when so needed and so requested by the court or whose summoned service on a jury is postponed to a future date certain.

*Black's Law Dictionary* defines "juror" as "a person serving on a jury panel," and defines a "jury panel" as "[a] panel of persons selected for jury duty and from among whom the jurors are to be chosen." *Black's Law Dictionary* 986, 989, 1789 (10th ed. 2014).

[¶11] In civil cases, "juror" is defined in very broad terms, and members of the jury pool clearly fall within the definition. While the definition provided in 14 M.R.S. § 1203-A(3) does not specifically define "juror" for the purposes of Title 17-A, we find it unlikely that the Legislature would narrow the definition for criminal purposes. It is inconceivable that the Legislature intended to prohibit attempts to improperly influence jurors who have been selected to serve, while allowing free rein to anyone who wants to improperly influence potential jurors who are awaiting possible selection in response to a traverse jury summons. The

---

[3] Additionally, the summons for a criminal jury trial states, "You are hereby notified that you have been drawn to serve as a Traverse Juror in the Superior Court and/or Unified Criminal Docket." "Traverse juror" is also not defined in Title 17-A.

definition of "juror" suggested by Solomon would lead to an absurd result and we decline to adopt such an interpretation. Given the broad definition of "juror" set forth in 14 M.R.S. § 1203-A(3), which we conclude applies to 17-A M.R.S. § 454 as well, the court did not err in denying Solomon's motion to dismiss.

[¶12] For similar reasons, the court correctly defined "juror" in the jury instructions. "We review jury instructions as a whole for prejudicial error, and to ensure that they informed the jury correctly and fairly in all necessary respects of the governing law." *State v. Hofland*, 2012 ME 129, ¶ 18, 58 A.3d 1023 (quotation marks omitted). Additionally, "we will vacate the court's judgment only if the erroneous instruction resulted in prejudice." *Caruso v. Jackson Lab.*, 2014 ME 101, ¶ 12, 98 A.3d 221. Because the court provided the jury with an accurate definition of "juror," there is no error with regard to the jury instructions.

B.    Opinion Testimony by Lay Witnesses

[¶13] Solomon argues that the court erred in allowing the lay witnesses to testify about whether they thought he was trying to influence them by holding up the sign. Two witnesses who had been potential jurors testified that they thought Solomon's action was an attempt to influence them. Because Solomon did not object when (1) that testimony was admitted, (2) he made a motion for a judgment of acquittal after the State rested, or (3) the State referenced the witnesses'

opinions during its closing argument, we review for obvious error.[4] *See State v. Perkins*, 2014 ME 159, ¶ 9, 107 A.3d 636.

[¶14]  Pursuant to the obvious error standard of review, we will vacate the judgment of conviction only if the trial court's failure to exclude the lay opinion testimony meets the following test:

> [T]here must be (1) an error, (2) that is plain, and (3) that affects substantial rights.  If these conditions are met, we will exercise our discretion to notice an unpreserved error only if we also conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings.

*State v. Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066 (quotation marks omitted).  "An error is plain if it is so clear under current law that the trial court can be expected to address it, even absent the defendant's timely objection to it." *Id.*  Lay witnesses are allowed to offer opinions that are rationally based upon their perceptions and that are helpful to a clear understanding of the witnesses' testimony.  *See* M.R. Evid. 701; *State v. Robinson,* 2015 ME 77, ¶ 24, --- A.3d ---.

[¶15]  In this case, the words on the sign speak for themselves, but the photograph and video shown at trial were of low quality and did not provide a good depiction of Solomon's silent interaction with the jury pool.  It is possible

---

[4]  While the defense properly raised the issue with the court before trial in a motion in limine, the court afterwards clearly directed counsel to raise the issue again when the witnesses testified in order to preserve the objections.  No objections were raised at the time of the testimony, therefore the issue remains unpreserved and the standard of review is obvious error.  *See State v. Perkins,* 2014 ME 159, ¶¶ 8-9, 107 A.3d 636.

that Solomon may have had some other purpose in displaying the sign, for example it could have been meant for the court audience and not the jury, or it could have been displayed by mistake. The witnesses who testified had the best opportunity to observe Solomon's demeanor and manner at the time of the alleged crime. The subtleties that the witnesses observed were probative as to Solomon's state of mind, and their impressions, expressed as lay opinions, were based upon perceptions that were helpful to the trial jurors' clear understanding; thus there was a basis for the court to admit the testimony and no obvious error occurred.

The entry is:

Judgment affirmed.

**On the briefs:**

Steven C. Peterson, Esq., West Rockport, for appellant Joseph M. Solomon II

Geoffrey A. Rushlau, District Attorney, and Patricia A. Mador, Asst. Dist. Atty., Office of the District Attorney, Bath, for appellee State of Maine

**At oral argument:**

Steven C. Peterson, Esq., for appellant Joseph M. Solomon II

Patricia A. Mador, Asst. Dist. Atty., for appellee State of Maine

Sagadahoc County Superior Court docket number CR-2013-56